1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HUMAN RESOURCE ADVANTAGE, LLC, and DEBBIE BROWNLEE, <br><br> Plaintiffs, <br><br> v. <br><br> THE HANOVER INSURANCE COMPANY, and Does 1 through 25, inclusive, <br><br> Defendants. | Case No.: 1:21-cv-01610-JLT-BAM <br><br> ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE <br><br> (Doc. 7) |

Human Resource Advantage, LLC and Debbie Brownlee assert that The Hanover Insurance Company breached the parties' contract. (Doc. 1-2.) Hanover seeks transfer of the action to the United States District Court for the District of Oregon pursuant to 28 U.S.C. § 1404(a). (Doc. 7.) Plaintiffs oppose the motion, asserting Hanover failed to meet its burden of demonstrating transfer is proper. (*See* Doc. 17.) The Court finds the matter suitable for decision without oral argument pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, Hanover's motion to transfer venue to the District of Oregon is **DENIED**.

**I.      Background**

HRA is an Oregon limited liability corporation with its principal place of business in Oregon. (Doc. 1-2 at ¶ 1.) Brownlee is an individual residing in Oregon. (*Id*.) Hanover asserts it is a New

Hampshire corporation with its principal place of business in Worcester, Massachusetts. (Doc. 7 at 6.)

Plaintiffs allege Hanover issued Plaintiffs a professional liability policy, which was in effect at all material times. (Doc. 1-2 at ¶ 6.) Plaintiffs assert that under the policy, Hanover was required to provide a defense to Plaintiffs for any claims asserted against Plaintiffs for "…any actual or alleged negligent act, error, omission, or misstatement committed in…" the course of Plaintiffs providing "pre-employment background screening" services. (*Id*. at ¶ 7.) Plaintiffs allege that despite repeated requests, Hanover refused to defend Plaintiffs in a cause of action for negligence arising out of Plaintiffs allegedly providing improper pre-employment background screening services to a client and therefore that Hanover failed to provide Plaintiffs the insurance benefits they were entitled to under the policy. (*See* Doc. 1-2 at ¶¶ 8-17, 19-20.) Based on these allegations, Plaintiffs assert claims against Hanover for breach of written contract and breach of the implied covenant of good faith and fair dealing. (*Id*. at ¶¶ 18-32.) On January 20, 2022, Hanover filed a motion to transfer venue to the District of Oregon pursuant to 28 U.S.C. § 1404(a). (Doc. 7.) Plaintiffs filed an opposition on February 14, 2022. (Doc. 17.) On February 22, 2022, Hanover filed a reply. (Doc. 19.)

## II.  Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Supreme Court explained the § 1404(a) analysis should be an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964). Accordingly, courts may consider several factors, including:

> (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum.

*Royal Queentex Enters. v. Sara Lee Corp.*, 2000 WL 246599, at *2 (N.D. Cal. 2000) (citing *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986)); *see also Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498-99 (9th Cir. 2000). Further, the Court may consider "the location where the relevant agreements were negotiated and executed." *Jones*, 211 F.3d at 498.

The party seeking a transfer of venue has the burden of demonstrating that the action could

have been brought in the transferee venue, *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013), and that transfer is appropriate. *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). Whether to grant a change of venue is within the discretion of a district court. *See Ventress v. Japan Airlines,* 486 F.3d 1111, 1118 (9th Cir. 2007) (explaining the determination of venue "involves subtle considerations and is best left to the discretion of the trial judge"). Finally, "[s]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen*, 376 U.S. at 645-46; *Pizana v. SanMedica Int'l LLC*, WL 4747947, at *3 (E.D. Cal. 2019).

## III.    Discussion and Analysis

### A.    Whether the case could have been brought in Oregon

Transfer of venue under § 1404(a) is only appropriate if the action could have been brought in the transferee venue. 28 U.S.C. § 1404(a). Because diversity of citizenship under 28 U.S.C. § 1332 provides the sole basis for jurisdiction in this matter and the parties would remain diverse in the District of Oregon, 28 U.S.C. § 1391(b) applies. *See Shanze Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 2015 WL 1014167, at *3 (E.D. Cal. 2015) (applying section 1391(b) to action based on diversity jurisdiction). Section 1391(b) provides, in part: "A civil action may be brought in…a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located…" 28 U.S.C. § 1391(b)(1). For venue purposes, a corporate defendant, such as Hanover, is considered to reside in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question…" *Id.* § 1391(c)(2). A plaintiff entity, whether incorporated or not, resides in the district where its principal place of business is located. *Id.*

The parties do not appear to dispute that Plaintiffs could have brought this case in the District of Oregon. For venue purposes, Plaintiffs are residents of Oregon. (*See* Doc. 1-2 at 2.) Hanover concedes it conducts business throughout Oregon and is subject to personal jurisdiction in the District of Oregon. (Doc. 7 at 9.) Thus, this matter could have been brought in the District of Oregon under 28 U.S.C. §§ 1391(b), (c). The Court will therefore proceed to weigh the factors relevant to the convenience of the parties, convenience of the witnesses, and the interest of justice in determining whether transfer is proper.

**B.      Convenience of the parties**

In evaluating the parties' convenience, the Court considers Plaintiffs' choice of forum, the parties' contacts with the forum, and the contacts relating to Plaintiffs' claims in the chosen forum. *Jones,* 211 F.3d at 498-99; *see also Burke v. USF Reddaway, Inc.*, 2013 WL 85428, at *2 (E.D. Cal. 2013).

As an initial matter, the Parties disagree over the weight to be given to Plaintiffs' choice of forum—California. The Ninth Circuit explained the Court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Decker Coal*, 805 F.2d at 843. In general, a plaintiff's choice of forum is given substantial weight, because courts attach a "strong presumption in favor of the plaintiff's choice of forum." *Piper Aircraft v. Reyno* 454 U.S. 235, 255 (1981). The Court's deference to Plaintiffs' choice of forum is diminished if the chosen forum is not connected to Plaintiffs, either by residency or because the claims are not connected to the forum. *See Fabus Corp. v. Asiana Exp. Corp.*, 2001 WL 253185, at *1 (N.D. Cal. 2001); *see also Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 482 (D. Del. 1987) ("[W]hen the plaintiff chooses a forum which has no connection to himself or the subject matter of the suit, and is thus not his 'home turf,' the burden on the defendant is reduced and it is easier for the defendant to show that the balance of convenience favors transfer.") (cited with approval in *Fabus*, 2001 WL 253185 at *1).

Hanover contends that because Plaintiffs are residents of Oregon and the subject policy was issued in Oregon, Plaintiffs' choice of forum is "entitled to little weight" and "California has no interest in this action." (Doc. 7 at 9-10.) The Court recognizes that Plaintiffs are not residents of California. HRA is an Oregon limited liability company and Brownlee is a resident of Oregon. (Doc. 1-2 at ¶ 1.) It is less clear whether Hanover is correct to assert that "California has no interest in this action." (Doc. 7 at 10.)

In deciding the weight to be given to a plaintiff's choice of forum, the Court must consider the parties' contacts with the forum, including those related to the plaintiff's cause of action. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (citing *Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949, 954 (9th Cir. 1968)). If a plaintiff's chosen forum lacks a significant connection to the events that gave rise to the complaint, the deference given to the plaintiff is slight. *Burke*, 2013 WL 85428, at *4

4

1   (citing *Morris v. Safeco Ins. Co.,* 2008 WL 5273719, at *4 (N.D. Cal. 2008)).

2             1.      Hanover's contacts with California

3        Hanover asserts it is a "major insurer conducting business throughout Oregon," and the only

4   connection California has to this action is that the underlying suit against Plaintiffs was brought in

5   California. (Doc. 7 at 9-10.) Yet considering Hanover has not challenged this Court's authority to

6   assert personal jurisdiction over it, the Court will assume Hanover has sufficient minimum contacts

7   with the forum in considering the amount of deference to grant Plaintiffs' choice of forum.

8             2.      Plaintiffs' contacts with California

9        Plaintiffs contend their choice of forum is "significant" and should not be disturbed. (Doc. 17

10  at 2.) Plaintiffs assert that more than 90% of their business is in California and that based on their ties

11  to California, they engaged DiBuduo and DeFendis Insurance Brokers, LLC to "negotiate and

12  purchase" the policy in Fresno, California. (Doc. 17-1 at 1-2.) Plaintiffs further argue that the

13  underlying suit giving rise to this action was made by a company with its principal place of business in

14  Clovis, California, and Hanover had a duty to defend any claim, which is defined as a "written demand

15  or suit you receive." (*See* Doc. 17 at 6-7.)

16       Hanover argues that Plaintiffs paid their policy premiums in Oregon and the policy was

17  delivered to Plaintiffs in Oregon. (Doc. 19 at 2-3.) Hanover further asserts that the underlying facts

18  giving rise to the suit did not occur in California because the demand letter from the plaintiffs in the

19  underlying suit was sent to in Oregon, as was Hanover's denial letter, which is where the alleged

20  breach occurred. (*Id*. at 3-4.)

21       As discussed *infra* Section D.2, the policy was made in Oregon, which includes a consideration

22  of where the policy premiums were paid (Oregon) and where the policy was delivered (Oregon). The

23  demand and denial letters were sent to Plaintiffs in Oregon, Plaintiff HRA's principal place of

24  business is in Oregon, and the alleged breach did not occur in California.

25       On the other hand, Plaintiffs utilized a California company to negotiate and purchase the policy

26  at issue, Plaintiffs maintained a large majority of their business presence in California, and Hanover's

27  refusal to defend Plaintiffs in contravention of the Parties' insurance policy gave rise to suit in

28  California—by a California company with which Plaintiffs did business. Specifically, the underlying

complaint against Plaintiffs alleged that Plaintiffs performed services in Fresno County, California, based upon a contract entered in California. (Doc. 1-5 at 39-40.)

On balance, this is not an action where the forum lacks a significant connection to Plaintiffs or the subject matter of the suit. Consequently, Plaintiffs' choice of forum is not substantially reduced in a manner that weighs in favor of transfer. *See Burke*, 2013 WL 85428, at *4; *Chrysler*, 663 F. Supp. at 482.

### C.     Convenience of the witnesses

"The relative convenience to the witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404(a)." *Saleh v. Titan Corp.,* 361 F. Supp. 2d 1152 (S.D. Cal. 2005) (quoting *State Capital Corp. v. Dente,* 855 F. Supp. 192, 197 (S.D. Tex. 1994)). Notably, "[w]hile the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is the more important factor." *Id.* (quoting *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.,* 734 F. Supp. 54, 57 (N.D. N.Y. 1990)). A transfer of venue "may be denied when witnesses either live in the forum district or are within the 100–mile reach of the subpoena power" because individuals cannot be compelled to testify when they reside beyond the boundaries of the Court's subpoena power. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981); *U.S. Indus., Inc. v. Procter & Gamble Co.,* 348 F. Supp. 1265 (S.D. N.Y. 1972). Consequently, to show inconvenience for witnesses, "the moving party should state the witnesses' identities, locations, and content and relevance of their testimony." *Meyer Mfg. Co. v. Telebrands Corp.*, 2012 WL 1189765, at *6 (E.D. Cal. 2012) (citing *Florens Container v. Cho Yang Shipping,* 245 F. Supp. 2d 1086, 1092-93 (N.D. Cal. 2002)).

#### 1.     Employee and non-party witnesses

Hanover argues that Oregon is a more convenient venue for out-of-state witnesses. (*See* Doc. 7 at 6.) Hanover's potential witnesses include Brownlee and Mary Gertsmeier, a Hanover claims-handler who Hanover asserts would be required to fly from the "Chicagoland area" to Fresno, a destination which provides no direct commercial flights, unlike Portland. (*See id*. at 15; Doc. 19 at 6.) As such, Hanover asserts the District of Oregon is a more convenient forum "for out-of-state travelers." (*Id.*)

6

Plaintiffs contend that the "convenience of the witnesses" analysis does not include employee witnesses. (Doc. 17 at 7-8.) Plaintiffs further assert, "H[anover] identifies only two witnesses, both belonging to parties or are themselves, a party to the action. The location of these individuals should be disregarded because compulsory process is not necessary to require their attendance at trial." (*Id.* at 8.) As Plaintiffs impliedly argue, Hanover's employee is not a third-party witness, and Hanover would be able to compel their testimony. (*See id.*)

Hanover relies on two cases in asserting that courts consider the convenience to parties and party witnesses in deciding whether to transfer venue. The Court does not find these cases instructive. In *Lexington Insurance Co. v. Maxum Casualty Insurance Co.*, 2017 WL 2654836 at *4 (E.D. Cal. 2017) and *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 467 (E.D. Cal. 1994), the witnesses were not parties. Hanover also argues there are no third-party witnesses to consider. (Doc. 19 at 6.) Plaintiffs contend that Jon Bettencourt is an agent with DiBuduo and DeFendis and lives in the Eastern District of California and is anticipated to testify. (*Id.* at 8.) Plaintiffs argue: "Were the matter transferred to the District of Oregon, as the only non[-]party witness identified, Mr. Bettencourt's attendance could not be compelled, never mind the increased inconvenience." (*Id.* at 9.)

Though the Court recognizes that courts consider the conveniences of the parties and witnesses, courts accord more weight to non-party witnesses than to employee witnesses. *Metz v. U.S. Life Ins. Co. in City of New York*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009) ("convenience of employees is less important than the convenience of non-party witnesses") (quoting *Catch Curve, Inc. v. Venali, Inc.*, 2006 WL 4568799, at *3 (C.D. Cal. 2006)). Because Hanover lists an employee witness and Plaintiffs list a non-party witness, the inconvenience of Plaintiffs' witness is accorded greater weight. *See Metz*, 674 F. Supp. at 1147.

### 2.    Relevance of testimony

Hanover contends that Gertsmeier is anticipated to "testify regarding Hanover's decision to deny coverage for the [underlying] claim." (Doc. 19 at 6.) Plaintiffs contend Jon Bettencourt is anticipated to testify "as to the negotiations and purchase of the Policy, and the expectations of the parties as to the location(s) where the agreement was to be performed at the time the Policy was entered." (Doc. 17 at 8.)

7

Hanover argues that "[t]he Court should decline to consider any convenience to Mr. Bettencourt as he is not a potential witness with respect to the merits of this case." (Doc. 19 at 5.) Hanover continues:

> While Mr. Bettencourt's anticipated testimony regarding the purchase of the Policy and the purported expectations of the parties as to the locations where the Policy was to be performed may relate to the choice of law issue that is currently before the Court, it is wholly immaterial to whether Hanover had a duty to defend Plaintiffs and/or breached the Policy or the implied covenant of good faith and fair dealing.

(*Id*.) However, Hanover's argument assumes the Court will agree with Hanover on several merits-related issues. If the Court does not, Hanover seems to concede that Bettencourt's testimony is relevant to choice-of-law questions. (*See id*.) Thus, the testimony of both anticipated witnesses appears to be relevant.

### 3. Balance

As a third-party witness, Bettencourt could not be compelled to testify if the matter were transferred to Oregon, and his inconvenience is accorded more weight than Gertsmeier's. *See Metz*, 674 F. Supp. at 1147. Also, regardless of whether the matter is transferred to Oregon, Gertsmeier would be required to travel to the West Coast from Chicago. Thus, in light of the status of each witness and in comparing the witnesses' relative inconvenience, Hanover has not met its burden of demonstrating its witness would suffer inconvenience, and this factor does not support a transfer of venue.

### D. Interest of justice

"Consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly and Co.,* 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citation omitted). The remaining factors for evaluating whether transfer is appropriate are the ease of access to the evidence, familiarity of each forum with the applicable law, any local interest in the controversy, and the relative court congestion and time of trial in each forum. *Royal Queentex*, 2000 WL 246599, at *2.

///

1.     Ease of access to the evidence

Hanover contends that the dispute should be decided upon the face of the policy, but "to the extent there is any other documentary evidence, it would involve documents/files that are available electronically and will thus be equally accessible in either forum." (Doc. 7 at 15.) Plaintiffs assert this factor weighs against transfer because the "negotiations and subsequent sale and delivery of insurance…occurred in California" and the underlying action was "filed and proceeded to default judgment in the Eastern District of California." (Doc. 17 at 14.) Nevertheless, Hanover does not claim that this factor weighs in favor of transfer.

2.     Familiarity of each forum with applicable law

Federal diversity cases should be litigated "in a forum that is at home with the law that must govern the action[.]" *Decker Coal,* 805 F.2d at 843. If another forum is more "at home" with the law, this favors transfer. *Shanze*, 2015 WL 1014167, at *3. "To determine which state's substantive law applies, we look to California choice-of-law rules." *Arrow Elecs., Inc. v. Liberty Mut. Ins. Co.*, 775 F. App'x 305, 306 (9th Cir. 2019) (citing *Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010)); *see also Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) ("[a] federal court sitting in diversity applies the forum state's choice of law rules"). California courts have used both the statutory choice-of-law rule and the "governmental interest" test in determining the substantive law that applies. *Shanze*, 2015 WL 1014167, at *3.

a.     *Breach of contract claim*

California's choice-of-law statute, Civil Code section 1646, determines the applicable law in governing the interpretation of a contract. *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1443 (2007), *as modified* (Sept. 5, 2007). Section 1646 states that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. "[A] contract indicate[s] a place of performance within the meaning of section 1646 if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances." *Frontier*, 153 Cal. App. 4th at 1450 (internal quotations omitted). "When the contract does not expressly specify a place of performance…the place of performance is the jurisdiction in

1  which the circumstances indicate the parties expected or intended the contract to be

2  performed." *Welles v. Turner Ent. Co.*, 503 F.3d 728, 738 (9th Cir. 2007) (citing *Burr v. W. States Life*

3  *Ins. Co.*, 211 Cal. 568, 574 (1931)). The relevant intent of the parties is interpreted at the time they

4  entered into the contract. *Frontier*, 153 Cal. App. 4th at 1449.

5                                   *i.*     *Intended place of performance*

6         The parties appear to concede that the policy does not contain a choice-of-law provision nor

7  does it explicitly indicate a place of performance. (*See generally* Doc. 7; Doc. 17.) However, Hanover

8  argues that Oregon law should apply because the policy was issued to Plaintiffs in Oregon, the address

9  listed in the policy is in Oregon, and the policy contains an Oregon endorsement. (*See* Doc. 7 at 10-

10  11.)[1] As such, Hanover asserts that "either Oregon was the intended place of performance or the policy

11  does not indicate a place of performance to the extent the insureds could be sued nationwide." (*Id.* at

12  11.)

13         The only state-specific endorsement in the policy relates to Oregon.[2] Both federal and state

14  courts have analyzed the existence of endorsements to glean the parties' intended place of

15  performance. For example, in *Global Decor, Inc. v. Cincinnati Ins. Co.*, 2011 WL 2437236 (C.D. Cal.

16  2011), the policy at issue included Illinois endorsements modifying both commercial general liability

17  and the umbrella coverage. *Id.* at *3. Thus, the court found the endorsements "clearly demonstrate that

18  the parties intended the policy to provide coverage for [p]laintiff[']s operations in Illinois." *Id.*

19  (quoting *Frontier*, 153 Cal. App. 4th at 1461 (internal quotation marks omitted)). In *Frontier*, the

20  policy specifically referred to claims arising from oil and gas operations at a particular drill site in

21

22  [1] Hanover's arguments regarding the listed address and where the policy was issued go to where the policy was made.
Hanover's argument regarding the Oregon endorsement, on the other hand, reflects the Parties' intended place of

23  performance and will be addressed in this section.

24  [2] The endorsement, titled "Oregon Miscellaneous Professional Liability Amendatory Endorsement", replaces "Section H –
Conditions, Paragraph 1. Cancellation and Non Renewal" to read: "a) We may not cancel this policy except for failure to

25  pay premium when due. Cancellation will not be effective until at least 10 business days after the Named Insured receives
our notice." (Doc. 1-5 at 27.) The original language read: "We may not cancel this policy except for failure to pay premium

26  when due, in which case we will give 10 days written notice to the named insured before such cancellation is effective."
(*Id.* at 20.) The endorsement also added: "d) Notices of cancellation or nonrenewal will be sent by first class mail to the

27  Named Insured and the producer of record at the last addresses known to us; stating the effective date of cancellation or
nonrenewal and the specific reasons for cancellation or nonrenewal. A post office certificate of mailing will constitute

28  proof that the named insured received notice on the third calendar day after the date of the certificate of mailing. e) If we
decide to offer renewal terms, notice will be mailed to the Named Insured and the producer of record by first class mail, at
least 45 days prior to the expiration of the policy." (*Id.* at 27.)

Beverly Hills, California. *Frontier*, 153 Cal. App. 4th at 1461. Additionally, two of the policy endorsements named the City of Beverly Hills and the Department of Transportation of the City of Los Angeles as additional insureds for claims arising out of operations in Beverly Hills. *Id*. Another endorsement waived the right of recovery against Beverly Hills for certain payments made under the policy. *Id*. As a result, the court concluded that "the parties anticipated that a suit arising from those operations in Beverly Hills could be prosecuted in California…" *Id*. at 1462.

The policy endorsement appears to relate only to cancellation and nonrenewal provisions and specifically, the notice owed to the named insured at their address, which happens to be in Oregon. Except for its title, the endorsement does not refer to Oregon-specific sites or additional insureds, and it does not otherwise mention Oregon. To this extent, the endorsement does not materially alter the policy terms, nor does it demonstrate the policy's intended place of performance.

Plaintiffs contend that the background check giving rise to the underlying action in California was completed prior to inception of the policy and that Hanover was notified by a claim letter of Plaintiffs' allegedly deficient professional services. (Doc. 17 at 11-12.) Thus, Plaintiffs argue that the parties would have anticipated that any defense obligation that might arise would be in California. (*Id*. at 12.)

Plaintiffs rely on *James River Ins. Co. v. Medolac Laboratories*, 290 F. Supp. 3d 956 (C.D. Cal. 2018), in furthering this argument. (Doc. 17 at 11-12.) However, the Court does not find *James River* to be particularly compelling. In *James River*, the insured was sued for breaching a Termination Agreement with a competitor. *James River*, 290 F. Supp. at 960. A subsequent suit arose between the insurance company and the insured, wherein the court analyzed the intended place of performance of the policy. *Id*. at 961, 964-66. The court reasoned that because the Agreement was signed prior to the inception of the policy and the Agreement contained choice of law and forum selection provisions requiring the Agreement to be governed by California law, "the surrounding circumstances indicated the parties expected and intended that [the insurer] would perform its duty to defend in California." *Id*. at 965-66.

Plaintiffs attempt to analogize the Agreement in *James River* with the background check performed by Plaintiffs and the claim letter Plaintiffs received prior to the underlying suit. (*See* Doc.

17 at 11-12.) However, the Agreement contained choice of law and forum selection provisions, and the court found that because the Agreement contained these provisions *and* was signed prior to the inception of the policy, the parties intended and expected California to be the place of performance. *See James River*, 290 F. Supp. at 965. Here, the claim letter that Plaintiffs tendered to Hanover mentioned that the underlying damage due to Plaintiffs' alleged actions occurred in California, and was sent to Plaintiffs from California, (*see* Doc. 1-5 at 31-32,) but the claim letter lacks any language demonstrating the Parties' expectation that California would be the place of performance of the separate insurance policy between Hanover and Plaintiffs.[3]

Plaintiff also argues that the policy's coverage territory includes the United States[4] and the policy's definition of "damages"[5] demonstrates the Parties' "intent that it be construed differently in different jurisdictions." (Doc. 17 at 10.) Thus, Plaintiffs argue Hanover "contemplated suit being brought anywhere in the United States, which would include California…, and that its language would receive different application depending on where the claim was brought." (*Id.*) Plaintiffs appear to be suggesting, therefore, that the intended place of performance should be determined retroactively based upon where a suit is eventually filed. The Court finds this argument unconvincing because it would render section 1646 ineffectual any time a contract contained generic "catch-all" jurisdictional language. A court in this district has previously rejected a similar argument. *See Shanze*, 2015 WL 1014167, at *4 ("[I]f the contract contemplates performance 'everywhere,' then the default rule would

---

[3] There is no obvious reason why a claim letter would contain a choice of law provision or a forum selection clause. Nonetheless, the present situation is distinguishable from *James River* because the claim letter here contains no indication as to the Parties' intended place of performance. Though the letter mentions that the allegedly substandard background check was performed on an employee working in Clovis, California, the claim letter was mailed to Plaintiffs in Oregon and does not indicate that claimant intended to file suit in California.

[4] "Section H – Conditions, Paragraph 8. Coverage Territory and Valuation" reads, in relevant part: "a) This policy applies to a wrongful act committed anywhere in the world provided that the claim is made and suit is brought against the insured within the United States, its territories or possessions or Canada." (Doc. 1-5 at 21.)

[5] "Section D – Definitions" states, in relevant part: "Damages also means punitive or exemplary damages or the multiple portions thereof, if insurable under the applicable law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction is where:
    1.    Those damages were awarded or imposed; or
    2.    Any wrongful act occurred for which such damages were awarded or imposed;
    3.    The named insured resides, is incorporated or has its principal place of business; or
    4.    We are incorporated or have our principal place of business.
(*Id.* at 15.)

allow a party seeking contractual remedies to select any law it likes, rendering section 1646 meaningless."); *see also Global Décor*, 2011 WL 2437236, at *3 ("Under Plaintiffs' broad theory, i.e., that the intended place of performance is wherever the underlying lawsuit actually arises, a specifically intended place of performance would not exist."). In sum, Plaintiffs are not correct that the generic language of the damages provision indicates that the place of performance is California.

At the same time, as mentioned, the Court is not persuaded by Hanover's arguments that the place of performance is Oregon based upon the listed address, where the policy was delivered, and a single Oregon endorsement that appears only to alter the provisions of cancellation or nonrenewal notice being effectuated. Given the lack of a choice of law provision or forum selection clause, there is no indication the policy had an intended place of performance. Accordingly, pursuant to section 1646, if a policy does not indicate a place of performance, the applicable law is "where [the policy] is made." Cal. Civ. Code § 1646.

### ii.   *Where the policy was made*

"Under California law, a contract is made in the place of acceptance." *Store Kraft Mfg. v. Wausau Bus. Ins. Co.*, 2014 WL 12561603, at *6 (C.D. Cal. 2014) (citing *ABF Cap. Corp. v. Grove Properties Co.*, 126 Cal. App. 4th 204, 222 (2005)); *see also Arno v. Club Med Inc.*, 22 F.3d 1464, 1469 n.6 (9th Cir. 1994) (holding that because the contract did not specify a place of performance, section 1646 requires courts to apply the law "where the contract was made, *i.e.*, where [plaintiff] accepted"). Plaintiffs argue the policy was negotiated and purchased by DiBuduo and DeFendis, a California company, which received the policy from Hanover and then forwarded it to Plaintiffs in Oregon. (*See* Doc. 17-1 at 2.) Hanover contends the policy was delivered and accepted in Oregon, irrespective of where Plaintiffs' agent is located. (Doc. 19 at 8.) Hanover also argues that the address listed in the policy is in Oregon, and the policy contains an Oregon endorsement. (*See* Doc. 7 at 10-11.)

Hanover relies upon *Mesa Underwriters Specialty Ins. Co. v. HYDS, Inc.*, 2020 WL 2608148 (C.D. Cal. 2020). In *Mesa*, the policy did not indicate a place of performance, but the Court explained that because the insured was a California corporation headquartered in California, the policy was issued to the insured in California through its agent located in California, the scheduled locations were

in California, and the only state-specific endorsements in the policy related to California, California law applied. *Mesa*, 2020 WL 2608148, at *3.

Under California law, "a contract is made in the state in which 'the last act necessary to the contract, the acceptance, was performed.'" *Ameron Int'l Corp. v. Am. Home Assur. Co.*, 2011 WL 2261195, at *5 (C.D. Cal. 2011) (quoting *Ury v. Jewelers Acceptance Corp*., 227 Cal. App. 2d 11, 16 (1964)). It is not clear in this case, however, whether acceptance was accomplished by Plaintiffs' agent or upon delivery of the policy to Plaintiffs in Oregon. *Mesa* does not help clarify that issue because there the agent and the insured were both located in California. Here, however, Plaintiffs' agent was in a different state from the insured and the insurer. The parties have not directed the Court to any directly analogous caselaw. Nonetheless, whether to transfer venue involves "subtle considerations" for the Court to use its discretion in making. *See Ventress,* 486 F.3d at 1118. Plaintiffs are Oregon residents (28 U.S.C. § 1391(c)) with a principal place of business in Oregon and the policy was delivered to Plaintiffs in Oregon through their agent in California. Furthermore, as discussed above, the only state-specific endorsement in the policy relates to Oregon. *See Mesa*, 2020 WL 2608148, at *3 (finding existence of only California endorsements a factor in concluding the policy was made in California). Thus, on balance, the Court concludes the policy was made in Oregon and this factor weighs in favor of transfer as the District Court of Oregon will be more familiar with the applicable law than this Court.

### b.   Breach of implied covenant of good faith and fair dealing

Under Plaintiffs' claim for breach of implied covenant of good faith and fair dealing, Plaintiffs specifically allege violations of California Insurance Code § 790.83(h)[6] and California Code of Regulations § 2695.1 *et seq*. (Doc. 1-2 at ¶ 27(g).) A California district court is more familiar with California law than a district court in another state. Nevertheless, federal courts in all states are fully capable of applying another state's substantive law. *Strigliabotti v. Franklin Res., Inc.,* 2004 WL 2254556 (N.D. Cal. 2004). The Court finds the existence of Plaintiffs' California claims weigh slightly against transfer. Thus, though the section 1646 analysis above favors transfer, because the burden rests

---

[6] The applicable section for insurance bad faith claims is section 790.03. Cal. Ins. Code § 790.03; *Ruiz v. Gen. Ins. Co. of Am.*, 2020 WL 4018274, at *1 (E.D. Cal. 2020).

1   with Hanover in demonstrating transfer is proper, on balance this factor weighs against transfer to the

2   District of Oregon.

3          3.     Local interest in the controversy

4         Hanover asserts, "Oregon has an interest in having a localized controversy decided at home as

5   this suit involved Oregon insureds and an insurance policy executed in Oregon." (Doc. 7 at 15.)

6   Plaintiffs contend that the operative facts—negotiations, subsequent sale, and delivery of the policy—

7   occurred in California. (*See* Doc. 17 at 13.) Plaintiffs continue, "California has an interest in applying

8   its laws because California has an interest in…regulating the conduct of insurers operating within the

9   state." (*Id*. at 14) (quoting *Jones v. St. Paul Travelers*, 496 F. Supp. 2d 1079, 1084 (N.D. Cal. 2007)).

10         Both Oregon and California have interests in the controversy. Oregon's interest lies in its

11   citizens—Plaintiff HRA's principal place of business is in Oregon and Plaintiff Brownlee resides in

12   Oregon. *See Rogers v. Wilmington Tr. Co.*, 2018 WL 489168, at *9 (E.D. Cal. 2018). Thus, Oregon

13   has an interest in protecting the rights of its citizens. With respect to California, Plaintiffs' business is

14   predominantly conducted in California. *See Royal Queentex*, 2000 WL 246599, at *8. Additionally,

15   the only named non-party witness located in either forum is Mr. Bettencourt, who resides in

16   California. On balance, this factor is neutral.

17          4.     Court congestion

18         The Court must consider "the administrative difficulties flowing from court congestion" when

19   considering the interest of justice. *Decker Coal,* 805 F.2d at 843 (citing *Piper Aircraft*, 454 U.S. at

20   255). Hanover argues that the "Eastern District of California has long-labored under one of the

21   heaviest case[]-loads in the nation and has enacted an Amended Standing Order in Light of Ongoing

22   Judicial Emergency in the Eastern District of California." (Doc. 7 at 14.) Citing the *Comparison of*

23   *Districts Within the Ninth Circuit – 12-Month Period Ending September 30, 2021*, Hanover notes that

24   as of September 30, 2021, the Eastern District of California had 7,929 cases pending, while the

25   District of Oregon had 3,603. (*See* Docs. 19 at 10; 19-2 at 2.)

26         The statistics reflect more court congestion in this district. On its own, however, the inundated

27   state of the Eastern District's case load is not adequate to warrant transfer. *See Trevino v. Golden State*

28   *FC, LLC*, 2019 WL 6790763, at *6 (E.D. Cal. 2019) ("[t]his district's backlog is by itself an

insufficient basis upon which to grant a motion to transfer"). Although civil cases move through the Court in a timely manner, recognizing the Court's congestion, this factor weighs in favor of transfer to the District of Oregon.

## IV.     Conclusion and Order

Taken as a whole, the convenience of the witnesses and the parties, as well as the ease of access to the evidence, weigh against transfer to the District of Oregon. Moreover, with respect to each forum's familiarity with the applicable law, the breach of contract claim weighs slightly in favor of transfer, but the breach of the implied covenant of good faith and fair dealing claim weighs against transfer, which leads the Court to conclude that Hanover has not met its ultimate burden of showing that transfer is appropriate under this factor. Finally, though court congestion weighs slightly in favor of transfer, this is insufficient on its own. The remaining factor, local interest in the controversy, is neutral.

In sum, though a close call, Hanover has failed to meet its burden of establishing that transfer of this action to the District of Oregon would be warranted for the convenience of the parties and witnesses, and in the interest of justice. *See Texas Gulf*, 371 F.2d at 147. Based upon the foregoing, the Court **ORDERS**:

1.     Defendant Hanover's motion for transfer of venue (Doc. 7) is **DENIED**.

IT IS SO ORDERED.

Dated:   **April 25, 2022**

UNITED STATES DISTRICT JUDGE