# EXHIBIT A

1                UNITED STATES DISTRICT COURT

2               EASTERN DISTRICT OF CALIFORNIA

3

4

5      HUMAN RESOURCE
       ADVANTAGE, LLC,
6      and DEBBIE BROWNLEE,

7                      Plaintiffs,

8          vs.                        Case No.
                                      1:21-CV-01610-JLT-BAM
9      THE HANOVER INSURANCE
       COMPANY, and Does 1
10     through 25, inclusive,

11                     Defendants.
       ------------------------
12

13

14

15             DEPOSITION OF DEBBIE BROWNLEE
          APPEARING REMOTELY FROM CROOK COUNTY, OREGON
16              Taken on behalf of the Defendants
                     *Via Videoconference*

17

18

19

20     January 24, 2023
       Portland, Oregon
21

22     Ariel Badenhop, CSR, RPR
       Court Reporter
23

24

25



1           BE IT REMEMBERED that the deposition of

2    DEBBIE BROWNLEE was taken remotely, on behalf of the

3    Defendants, before Ariel Badenhop, Registered

4    Professional Reporter and Certified Shorthand Reporter

5    No. 13-0424 for Oregon, on Tuesday, January 24, 2023,

6    in PORTLAND, OREGON, commencing at the hour of

7    10:36 a.m. Pacific Standard Time.

8

9

10                   REMOTE APPEARANCES

11

12      For Plaintiffs:      JAMES H. WILKINS
                             WILKINS DROLSHAGEN & CZESHINSKI
13                           3785 N. WILLOW AVENUE
                             FRESNO, CA 93710
14                           (559) 438-2390
                             j.wilkins@wdcllp.com
15

16      For Defendants:      KELLY M. OGNIBENE
                             LEWIS BRISBOIS BISGAARD & SMITH
17                           550 WEST ADAMS STREET
                             SUITE 300
18                           CHICAGO, ILLINOIS 60661
                             (312) 463-3389
19                           kelly.ognibene@lewisbrisbois.
                             com
20

21

22                   --o0o--

23

24

25



DEBBIE BROWNLEE                                    January 24, 2023
HRA vs HANOVER INS.                                              3

```
 1                    I N D E X

 2

 3              DEPOSITION OF DEBBIE BROWNLEE

 4   Examination by Ms. Ognibene                   4

 5

 6

 7

 8

 9                     EXHIBITS

10                                               Page

11   Exhibit 1  March 17, 2017, SES Letter        5

12   Exhibit 2  April 2017 Hanover Denial Letter  7

13   Exhibit 3  November 15, 2017, HRA Letter      8

14   Exhibit 4  HRA Response to Special
                Interrogatories                   11
15

16

17

18                     --oOo--

19

20

21

22

23

24

25
```



```
 1                 MULTNOMAH COUNTY, OREGON;

 2                TUESDAY, JANUARY 24, 2023

 3                      9:47 a.m.

 4                         ***

 5                   DEBBIE BROWNLEE

 6  was called as a witness on behalf of the Defendants

 7       and, being first duly sworn, was examined

 8                 and testified as follows:

 9                         ***

10        MS. OGNIBENE:  Let the record reflect that

11  this is the deposition of Plaintiff Debbie Brownlee in

12  this action.  This deposition is being taken pursuant

13  to notice and will be governed by the Federal Rules of

14  Civil Procedure as well as the local rules for the

15  Eastern District of California.

16

17                     EXAMINATION

18  BY MS. OGNIBENE:

19     Q.   Could you please state your full name again

20  for the record?

21     A.   Deborah Arlene Brownlee.

22     Q.   We went through the ground rules in the

23  earlier 30(b)(6) deposition.  Do you need me to go

24  through them again?

25     A.   No.
```



1    Q.    So you are one of the -- or the principal of

2  Human Resource Advantage, which I'll refer to as HRA;

3  is that correct?

4    A.    Yes.

5    Q.    And in that role, do you have any involvement

6  with the purchase of insurance coverage?

7    A.    Yes.

8    Q.    What would -- what does that entail?

9    A.    I contact an insurance broker and then tell

10  them what my company is, what we do, and basically

11  that we need errors and omissions insurance, and then

12  I believe the broker looks around for the best price

13  or the best coverage and then gives me a quote.

14    Q.    Have you ever had to, outside of the SES

15  claim, submit any other claims to insurance carriers?

16    A.    No.

17    Q.    I'm going to have you look at that March 17,

18  2017, letter from SES to HRA.

19          MS. OGNIBENE:   For purposes of this

20  deposition, we'll mark that as Exhibit 1.

21          (Exhibit No. 1 marked for identification.)

22  BY MS. OGNIBENE:

23    Q.    You've seen this letter before; correct?

24    A.    Yes.

25    Q.    Would you tell me what it is?



1      A.   It's a letter from the law office of Greg
2   Smith.  It's a notice of claim for damages against
3   HRA.
4      Q.   Thank you.  Could you please go to the second
5   page of that letter?
6      A.   Okay.
7      Q.   And looking at the second to last paragraph,
8   the first sentence, can you please read that for me?
9      A.   "It is imperative that SES recover all of the
10  losses incurred as a result of the professional
11  negligence of and breach of contract by HRA.  I would
12  therefore appreciate you providing this letter to your
13  professional liability carrier or risk claims manager
14  so that we can hopefully resolve this matter in an
15  expedient manner."
16     Q.   Would you agree that this letter only alleged
17  professional negligence and breach of contract on the
18  part of HRA?
19     A.   As far as I know, it looks like that.
20     Q.   Okay.  Would you agree that this letter did
21  not make any demand on you personally but it was just
22  limited to HRA?
23     A.   As far as I recall, yeah, it was just HRA.
24     Q.   I'll have you look again at the Hanover
25  denial letter dated April 2017.



 1              (Exhibit No. 2 marked for identification.)

 2    BY MS. OGNIBENE:

 3       Q.   Do you recall seeing this letter back around

 4    that time in April 2017?

 5       A.   Yes.

 6       Q.   Okay.  Let's look at the first paragraph on

 7    the last page of that letter.

 8       A.   Which paragraph?

 9       Q.   There's a bunch of quoted policy language,

10    and there's a paragraph underneath that, and it's the

11    last sentence of that paragraph we were just

12    discussing.  Could you read that, please?

13       A.   "As all claims against your company arise out

14    of or are a result directly or indirectly from

15    Ms. Marshall's embezzlement, Hanover denies coverage

16    for this matter."

17       Q.   Would you agree that that language is just

18    denying coverage to HRA for the SES claim that had

19    been made against it?

20              MR. WILKINS:  Objection.  Calls for

21    speculation.  Lacks foundation.

22              You can answer.

23              THE WITNESS:  I don't know.

24    BY MS. OGNIBENE:

25       Q.   Would you agree, though, that that sentence



1  says that all claims against your company -- that's

2  what that sentence says?

3      A.   Yes.

4      Q.   Okay.  Thank you.

5           Let's look at the attachment that is

6  labeled -- the November 15, 2017, letter from HRA to

7  Hanover.

8      A.   Okay.

9           MS. OGNIBENE:  We'll mark this as Exhibit 3,

10  I believe.

11          (Exhibit No. 3 marked for identification.)

12  BY MS. OGNIBENE:

13     Q.   Have you seen this letter before?

14     A.   I believe I received a copy, yes.

15     Q.   Did HRA authorize its counsel to send that

16  letter to Hanover?

17     A.   Yes.

18     Q.   Okay.  Looking at the first sentence in that

19  letter, what does that state?

20     A.   "I am personal counsel to Human Resource

21  Advantage, LLC."

22     Q.   And looking at the last page, page 4, under

23  the conclusion heading, could you read that sentence?

24     A.   "We are requesting that Hanover immediately

25  provide written conformation that it will be providing



1  a complete defense and indemnity to Human Resource

2  Advantage, LLC, for the claims asserted by Symmetry

3  Elevation Solutions, LLC."

4      Q.   Okay.  Do you recognize that this letter was

5  sent only on behalf of HRA?

6          MR. WILKINS:  Objection.  Calls for

7  speculation.  Lacks foundation.

8          THE WITNESS:  I don't know.

9  BY MS. OGNIBENE:

10     Q.   Do you recognize that, at least with respect

11 to the first sentence, it states that your counsel

12 represents HRA; correct?

13     A.   Yes.

14     Q.   No reference to you personally in that

15 letter; correct?

16     A.   Correct.

17     Q.   And the request that's made at the end of the

18 letter is made with only reference to HRA; is that

19 correct?

20     A.   Correct.

21     Q.   Let's talk about the lawsuit that was filed

22 by SES.

23          Do you recall, personally, when you were

24 first aware of the lawsuit that was filed by SES?

25     A.   Which are you talking about?  The first



1  letter that we received or the lawsuit?

2      Q.   The actual lawsuit, the complaint that was

3  filed in court by SES.

4      A.   I believe so, yes.

5      Q.   Do you recall how you became aware of that?

6      A.   I believe I probably got a copy from

7  Mr. Wilkins.

8      Q.   And did you ever personally report the

9  lawsuit to Hanover?

10     A.   I don't recall.  I don't think so.

11     Q.   Would you recall why you didn't report the

12 lawsuit to Hanover?

13     A.   Well, I believe that we had already submitted

14 the claim twice to Hanover and twice they denied it.

15 So I just let Mr. Wilkins handle whatever needed to be

16 done.

17     Q.   You didn't ever advise Hanover that a claim

18 had been made against you, personally; is that

19 correct?

20     A.   Correct.

21     Q.   I know you had testified with respect to this

22 issue on behalf of HRA, but I wanted to ask if you,

23 personally, had entered into any sort of attorney fee

24 agreements or engagement agreements with respect to

25 those underlying demand letters made by SES or the SES



```
 1   lawsuit?
 2        A.   No.
 3        Q.   And did you personally incur any attorney's
 4   fees or costs for those demand letters?
 5        A.   No.
 6        Q.   Did you personally incur any attorney's fees
 7   or costs in connection with the SES lawsuit filed in
 8   court?
 9        A.   No.
10        Q.   Do you attribute any physical, mental, or
11   emotional distress to any conduct by Hanover?
12        A.   Absolutely.  Ever since we got the first
13   letter from Symmetry, it was terribly upsetting.  We
14   didn't know what to do.  It's been years now, and I
15   don't even like to think about the case because it's
16   just really upsetting.  I lose sleep over it because I
17   don't understand any of it, and it's been very
18   traumatic.  I just try not to think about it and let
19   Mr. Wilkins handle it.
20        Q.   Let's look at the document titled "HRA
21   Response to Special Interrogatories."
22        A.   Okay.
23             (Exhibit No. 4 marked for identification.)
24   BY MS. OGNIBENE:
25        Q.   Have you seen this document before?
```



1       A.    I have seen this document.  But I don't

2   recall all of the questions and answers, but I believe

3   I've seen it.

4       Q.    In response to Interrogatory No. 19, which is

5   on page 10, it states that you've had emotional

6   distress such as loss of sleep, headaches, betrayal,

7   abandonment, anger, turmoil, and anxiety; correct?

8       A.    Correct.

9       Q.    Have you ever experienced anxiety in your

10  role as the principal of HRA?

11      A.    Yes.

12      Q.    Can you describe that for me?

13      A.    Well, I would say the same emotions,

14  emotional turmoil, upset as far as what's going to

15  happen with the company; that we possibly have to file

16  for bankruptcy if we couldn't resolve the issues.

17      Q.    How often, in your role as principal of HRA,

18  do you experience anxiety?

19      A.    Wow.  Well, every time I think about the case

20  and -- that's hard to say.  I mean, maybe three times

21  a month, I guess, would be a guess.

22      Q.    Before the claim was made by SES or the

23  lawsuit brought, at that point, did you ever

24  experience anxiety in your role as principal of HRA?

25      A.    No, not really.  No.



1    Q.   Same with respect to loss of sleep.  Did you

2   ever experience loss of sleep in your role as

3   principal of HRA prior to the SES claim?

4    A.   No, I don't believe so.

5    Q.   Did you ever experience headaches in your

6   role as principal of HRA prior to the SES claim?

7    A.   Prior -- no.

8    Q.   As a result of the alleged conduct by

9   Hanover, have you sought treatment from any doctor or

10  other medical provider?

11   A.   No.

12   Q.   Is there any reason for that?

13   A.   No, no reason.

14   Q.   Have you had any discussions with any medical

15  provider relating to your claims against Hanover?

16   A.   No.

17   Q.   Do you still have any complaints that you

18  attribute to conduct by Hanover?

19   A.   Yes.  The continuing turmoil and just anxiety

20  over it all.

21   Q.   Have you received any treatment separate and

22  apart from doctor's visits or treatments received in

23  connection with Hanover's denial of coverage?

24   A.   I'm sorry.  I don't understand the question.

25   Q.   For example, maybe have you seen -- have you



 1  sought any treatment that wouldn't necessarily be

 2  medical treatment?  Perhaps seeing a massage

 3  therapist?  Anything like that?

 4      A.   No.

 5      Q.   Have you taken any medications prescribed or

 6  not as a result of the injuries you attribute to

 7  Hanover?

 8      A.   No.

 9      Q.   Could you detail for me which actions on the

10  part of Hanover caused you to suffer from these

11  issues?

12      A.   Mainly just their denial of the taking of the

13  case and fighting the lawsuit.

14      Q.   Okay.  So let's clarify.  The denial of

15  coverage and, then, this lawsuit is another reason?

16      A.   Yes.

17           MS. OGNIBENE:  I think that's all I have.

18           MR. WILKINS:  Okay.  You can leave now.

19           Of course, I'll take a copy of both

20  transcripts.

21           MS. OGNIBENE:  I will as well.

22           (PROCEEDINGS CONCLUDED AT 10:55 a.m.)

23

24

25



1

2                         CERTIFICATE

3

4                    I, ARIEL BADENHOP, a Registered

5   Professional Reporter and Certified Shorthand Reporter

6   No. 13-0424 for Oregon, do hereby certify that DEBBIE

7   BROWNLEE appeared before me remotely, via

8   videoconference, at the time and place mentioned in

9   the caption herein; that the witness was by me first

10  duly sworn on oath and examined upon oral

11  interrogatories propounded by counsel; that at said

12  time and place I reported in Stenotype all testimony

13  adduced and other oral proceedings had in the

14  foregoing manner; that thereafter my notes were

15  reduced to typewriting under my direction, and that

16  the foregoing transcript, pages 1 through 15,

17  constitutes a full, true, and accurate record of all

18  such testimony adduced and oral proceedings had, and

19  of the whole thereof.

20                        WITNESS MY HAND at Portland, Oregon,

21  on February 4, 2023.

22  
    _____
23  ARIEL BADENHOP -   RPR, CSR
    Registered Professional Reporter   Expires: 09/30/2022
24  Oregon CSR No. 13-0424             Expires: 03/31/2023

25

# EXHIBIT B

1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   JORDON E. HARRIMAN, SB# 117150
2    E-Mail: Jordon.Harriman@lewisbrisbois.com
   633 West 5th Street, Suite 4000
3  Los Angeles, California 90071
   Telephone: 213.250.1800
4  Facsimile: 213.250.7900

5  KELLY M. OGNIBENE (pro hac vice)
   Email: Kelly.Ognibene@lewisbrisbois.com
6  550 West Adams Street, Suite 300
   Chicago, Illinois 60661
7  Telephone; 312.463.3389

8  Attorneys for Defendant, HANOVER
   INSURANCE COMPANY

9

10

11                   UNITED STATES DISTRICT COURT

12               EASTERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  HUMAN RESOURCE ADVANTAGE, LLC AND DEBBIE BROWNLEE, | Case No. 1:21−CV−01610−JLT−BAM |
| 15 | |
| 16          Plaintiffs, | Trial Date:           12/4/2023 |
| 17      vs. | DECLARATION OF WILLIAM HURLEY IN SUPPORT OF HANOVER'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION |
| 18  THE HANOVER INSURANCE COMPANY, | |
| 19          Defendants. | |
| 20  THE HANOVER INSURANCE COMPANY, | Filed Concurrently with Hanover's Motion for Summary Judgment, or In the Alternative, Summary Adjudication; Hanover's Statement of Undisputed Facts; and Hanover's Memorandum of Points and Authorities |
| 21          Counter-Claimants, | |
| 22      vs. | |
| 23  HUMAN RESOURCE ADVANTAGE, LLC AND DEBBIE BROWNLEE, | |
| 24 | |
| 25          Counter-Defendants. | |

26      I, William P. Hurley, declare as follows:

27      1.    I am an attorney employed as claims counsel for The Hanover Insurance Company

28  ("Hanover"). The facts set forth herein are of my own personal knowledge, and if sworn I could and



94401740.1

---

DECLARATION OF WILLIAM HURLEY IN SUPPORT OF HANOVER'S MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

1   would competently testify thereto.

2       2.      Hanover is a corporation organized under the laws of New Hampshire, with its

3   principal place of business in Worcester, Massachusetts.

4       3.      Hanover issued Miscellaneous Professional Liability Policy No. LHF A403590 02

5   to Human Resources Advantage, LLC, effective from 9/26/2016 to 9/26/2017 (the "Policy"). A

6   certified copy of the Policy is attached hereto as Exhibit 1.

7       I declare under penalty of perjury under the laws of the United States of America that the

8   foregoing is true and correct and that this declaration was executed on this 5th day of May, 2022,

9   at Worcester, Massachusetts.

10

11                                                     *William P. Hurley*

12                                          _____
                                                       William P. Hurley

13

14

15  DATED:  May 5, 2023

16

17

18

19

20

21

22

23

24

25

26

27

28



94401740.1                                    2
DECLARATION OF WILLIAM HURLEY IN SUPPORT OF HANOVER'S MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT B-1

**(Ex 1 to Ex B – Hurley Declaration)**



10/22/2021

SMITH, KERRIE L.
THE HANOVER INSURANCE GROUP
MAIL STOP S316


RE: CERTIFIED COPY OF THE POLICY


TO:  WHOM IT MAY CONCERN


This is to certify that I am a Underwriter of Citizens/Hanover Insurance Company
duly authorized to keep the company's records. The attached copy is certified
as a true and correct copy of the company's record of policy.


Policy Number:      LHF A403590 02

Policy Issued To:    HUMAN RESOURCE ADVANTAGE LLC

Date Span:            09/26/2016  TO 09/26/2017


 Any questions can be initiated in the Process Support Department by contacting
ANNE BONDANZA  at 508-855-2799 and DONNA SWANSON at 508-855-3365..


Sincerely,

RITA AMMERS

UNDER WRITER

440 Lincoln Street ▪ Worcester, MA 01653   *P h o n e*  | 508 - 853 - 7200   *F a x*  | 508 - 853 - 6332
The Hanover Insurance Company   |   Citizens Insurance Company of America

w w w . H a n o v e r . c o m



**Hanover Professionals**
*DECLARATIONS*    **Advantage Portfolio**

*THIS IS A CLAIMS-MADE POLICY. PLEASE READ THE POLICY CAREFULLY.*

## MISCELLANEOUS PROFESSIONAL LIABILITY POLICY

| Policy Number | Coverage is provided by: | Agency | Agency Code |
|---|---|---|---|
| LHF A403590 02 | The Hanover Insurance Company<br>440 Lincoln Street<br>Worcester, MA 01653 | DIBUDUO & DEFENDIS INS. | 5701031 |

**Issue Date:**    01/10/2017

**Item 1. Named Insured and Address:**
HUMAN RESOURCE ADVANTAGE LLC
85 SE STEELE STREET
MADRAS, OR 97741

**Item 2. Policy Period:**
Inception Date: 09/26/2016
Expiration Date: 09/26/2017
12:01 A.M. Standard Time at the address of the Named Insured as stated herein

**Item 3. LIMIT OF LIABILITY**

Limit of Liability
**a.** $1,000,000 for each **Claim**; not to exceed
**b.** $1,000,000 for all **Claims** in the aggregate

**Item 4. DEDUCTIBLE:**    $2,500  Each Claim

**Item 5. RETROACTIVE DATE**: 09/26/2003

**Item 6. PROFESSIONAL SERVICES**

Pre-Employment Background Screening

**Item 7. PREMIUM FOR THE POLICY PERIOD:**
    Total Premium: $1,796.00

**Item 8. NOTICE OF A CLAIM**
Report any claim to the Company as required by Section **G. DUTIES IN THE EVENT OF CLAIM(S) OR POTENTIAL CLAIM(S)**:

The Hanover Insurance Company
P.O. Box 15145
Worcester, MA  01615

**National Claims Telephone Number**: 800-628-0250
**Facsimile:** 800-399-4734
**Email:** firstreport@hanover.com

**Item 9.** Forms attached at issue:

| | | |
|---|---|---|
| 910-0002 | 01/12 | Miscellaneous Professional Liability Policy - Declarations |
| 910-0001 | 12/09 | Miscellaneous Professional Liability Insurance Policy |
| 231-0862 | 12/14 | Customer Notice of Privacy Policy and Producer Compensation Practices Disclosures Privacy Policy Disclosure |
| 401-1268 | 08/12 | U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders |
| 910-0140 | 10/11 | Notice to Policyholders: Information Regarding Extended Reporting Period ("ERP Coverage") |
| 910-0122 | 11/09 | Oregon Miscellaneous Professional Liability Amendatory Endorsement |

**910-0002 01 12**                                                                 **Page 1 of 2**

910-0707        01/12        Limited Discrimination Coverage Endorsement - Professional Services
SIG-1100        08/14        Signature Page

**Item 10.** Producer Name and Address: DIBUDUO & DEFENDIS INS.
PO BOX 5479
FRESNO, CA 93755

**MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY**

**TABLE OF CONTENTS**

A.  COVERAGE – WHAT THIS POLICY INSURES .................................................................. 2

B.  DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY) ..................................... 3

C.  LIMIT OF LIABILITY AND DEDUCTIBLE ......................................................................... 3

    1.  LIMIT OF LIABILITY ............................................................................................. 3

    2.  DEDUCTIBLE ..................................................................................................... 3

    3.  REIMBURSEMENT .............................................................................................. 3

D.  DEFINITIONS ........................................................................................................ 3

E.  EXCLUSIONS - WHAT THIS POLICY DOES NOT INSURE ..................................................... 6

F.  EXTENDED REPORTING PERIOD ................................................................................. 8

G.  DUTIES IN THE EVENT OF CLAIM(S) OR POTENTIAL CLAIM(S) ............................................ 8

H.  CONDITIONS .......................................................................................................... 9

    1.  CANCELLATION AND NON RENEWAL ..................................................................... 9

    2.  REPRESENTATIONS AND APPLICATION ................................................................. 9

    3.  LEGAL ACTION AGAINST US ................................................................................ 9

    4.  CHANGE IN OWNERSHIP, CONTROL OR EXPOSURE ................................................. 9

    5.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US ................................. 10

    6.  ASSIGNMENT ................................................................................................... 10

    7.  SOLE AGENT FOR THE INSURED ......................................................................... 10

    8.  COVERAGE TERRITORY AND VALUATION .............................................................. 10

    9.  OTHER INSURANCE .......................................................................................... 10

    10. TWO OR MORE POLICIES, COVERAGE PARTS, OR ENDORSEMENTS ISSUED BY US .. 11

    11. ALLOCATION ................................................................................................... 11

    12. SEPARATION OF INSUREDS ............................................................................... 11

    13. CONFORMANCE TO STATUTE ............................................................................ 11

    14. SECTION TITLES .............................................................................................. 11

    15. BANKRUPTCY .................................................................................................. 11

    16. LIBERALIZATION .............................................................................................. 11

# MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE POLICY

This is a **CLAIMS-MADE AND REPORTED** policy. Subject to the terms, conditions, exclusions and limitations of this policy, coverage is limited to liability for only those claims that are first made against you and reported to us in writing after the retroactive date and during the policy period or any optional extended reporting period, if exercised by you.

This is a **"defense within limits"** policy with claim expenses included within the limit of liability. The limit of liability available to pay damages will be reduced by amounts we pay for claim expenses as defined in the policy. Further note that amounts incurred for claim expenses and damages are subject to the deductible.

**Please read this policy carefully.**

Throughout this **policy**, the terms **we**, **us** and **our** refer to the **Company** providing this insurance. The terms **you** and **your** refer to the persons and entities insured under this **policy**. Other terms in bold print have special meaning and are defined in the **policy**.

## A. COVERAGE – WHAT THIS POLICY INSURES

**1.** Professional Services Coverage

**We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** arising from a **wrongful act** in the rendering or failure to render **professional services** by **you**.

The following additional requirements and limitations shall apply to coverage provided under **A.1** above and **A.3.** and **A.4.** below:

**a.** The **wrongful act** must have first occurred on or after the applicable **retroactive date(s)**;

**b.** **You** had no knowledge of facts which could have reasonably caused **you** to foresee a **claim**, or any knowledge of the **claim**, prior to the effective date of this **policy**; and,

**c.** The **claim** must first be made and reported to **us** in writing during the **policy period** or any **extended reporting period**, if applicable, and must arise from any **wrongful act** to which this **policy** applies.

**2.** Disciplinary Proceedings Coverage

**We** will pay on **your** behalf only **defense expenses** incurred in responding to a **disciplinary proceeding** commenced against **you** and reported to **us** in writing during the **policy period**, or which was commenced during the **policy period** and, if exercised, reported to **us** in writing during any optional **extended reporting period.** The maximum amount available for **defense expenses** for a **disciplinary proceeding** is $25,000 for each **policy period**, regardless of the number of **disciplinary proceedings**. Any payment made hereunder shall not be subject to the deductible and shall not reduce any applicable limit of liability. Inclusive within this coverage, we will pay up to $250 per day for any salaries and expenses of **your** employees required to attend or participate in any **disciplinary proceeding**. We shall not pay any **damages** incurred as a result of **disciplinary proceedings**.

**3.** Personal Injury Coverage

**We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** and reported to **us** in writing during the **policy period**, or any **extended reporting period**, if applicable, that arise from **your professional services** and are for:

**a.** **Your** defamation, libel, slander, product disparagement, trade libel, infliction of emotional distress or other tort related to disparagement or harm to the reputation or character of any person or entity;

**b.** **Your** invasion or interference with the right to privacy or publicity, including but not limited to false light, public disclosure of private facts, intrusion and invasion; or

**c.** **Your** causing a third party to be subject to false arrest, detention or imprisonment.

**4.** Technology Professional Coverage

**We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** arising from **your professional services** and made against any **insured** and reported to **us** in writing during the **policy period**, or any **extended reporting period**, if applicable, that arises from:

    **a.** The inability of an authorized third party to gain access to **computer services;**

    **b. Unauthorized access** to **computer services** that results in:

        **1)** The destruction, deletion or corruption of electronic data on **computer services**; or

        **2)** Denial of service attacks against **computer services** or transmission of **malicious code** to **computer services**.

## B.  DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY)

**We** have the right to investigate and the exclusive right to defend any **claim** made under this **policy**, even if the allegations are groundless, false or fraudulent until there is a final adjudication against **you**. **We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution against **you**. If a **claim** is not covered under this **policy**, **we** will have no duty to defend it.

Payment of **claim expenses** will reduce the amounts available to pay **damages**. **Our** duty to defend any **claim** or pay any amount as **damages** or **claim expenses** will cease when **our** limit of liability has been exhausted. Upon exhaustion of the limits of liability, **we** will tender control of the defense to the **named insured**. The **named insured** agrees to accept this tender of defense.

**We** will not settle a **claim** without the consent of the **named insured**. If the **named insured** refuses to consent to a settlement **we** recommend and which a claimant would accept, then **our** liability for the **claim** will not exceed the amount for which **we** would have been liable for **damages** if the **claim** had been settled as recommended by **us** and acceptable to the claimant, including **claim expenses** incurred up to the date of the **named insured's** refusal. After the time of the **named insured's** refusal, the **named insured** shall be responsible for all **damages** in excess of the amount for which the **claim** could have been settled, and all **claims expenses** incurred thereafter. For the purpose of this section, settlement includes but is not limited to any resolution of a **claim** that would have occurred as a result of any court-ordered process which the **named insured** chose not to accept.

The **named insured** is responsible for any fees or costs charged by a lawyer defending **you** or any other defense expenses incurred without **our** written consent.

## C.  LIMIT OF LIABILITY AND DEDUCTIBLE

### 1.  LIMIT OF LIABILITY

The limit of liability per claim limit shown on the Declarations page Item **3.a**.is the most we will pay for the sum of all **damages** and **claim expenses** arising out of a single **claim** or a series of related **claims**, regardless of the number of persons or entities insured under this policy, number of **claims** made or the number of persons or entities making claims during the **policy period** or during any **extended reporting period**, if any.

The Aggregate limit shown on the Declarations Item **3.b**.is the most we will pay for the sum of all **damages** and **claim expenses** for all **claims** under this policy.

### 2.  DEDUCTIBLE

    **a. You** will pay the deductible amount shown in the Declarations. The deductible applies to each **claim**. **We** will not be required to make any payment for **claim expenses,** settlements reached, or judgments rendered in an otherwise covered **claim** unless and until **you** have paid the deductible in full. **You** must pay the deductible (i) immediately when invoiced or, (ii) in the event that offers of judgment or settlement demands are made which **you** and **we** agree should be accepted, prior to the expiration of the time period for responding to such offers or demands.

    **b.** All **claim expenses** will first be subtracted from the limit of liability, with the remainder, if any, being the amount available to pay for **damages** after **you** have paid the deductible in paragraph a.

    **c.** If **you** and **we** agree to use **mediation** to resolve any **claim** brought against **you** and if the **claim** is resolved by **mediation**, **your** deductible obligation for that **claim** will be reduced by 50%.

### 3.  REIMBURSEMENT

In the event that **we** voluntarily choose or are compelled by a court of law to make any payment of the deductible and request reimbursement from **you**, the reimbursement is payable immediately, but no later than thirty (30) days after written demand.

## D.  DEFINITIONS

**Acts of Terrorism** means activities against persons, organizations or property of any nature:

    **1.** That involve the following or preparation for the following:

    **a)** Use or threat of an act that interferes with or disrupts electronic, communication, information, or Use or threat of force or violence; or

    **b)** Commission or threat or a dangerous act; or

    **c)** Commission or threat of an act that interferes with or disrupts electronic, communication or mechanical systems; and

**2.** When one or both of the following apply:

    **a)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **b)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or to express opposition to) a philosophy or ideology.

To qualify as an **act of terrorism**, the act must be determined by a governmental official or governmental authority to be an **act of terrorism** or cyber terrorism or that it was committed by a terrorist or cyber terrorist.

**Bodily Injury** means physical injury, sickness or disease and, if arising out of the foregoing, mental anguish, emotional distress, mental injury, shock, humiliation or death at any time.

**Claim** means a written demand or **suit you** receive.

**Claim expenses** means all expenses **we** incur or authorize in writing for the investigation, adjustment, defense or appeal of a **claim.** These expenses include fees charged by a lawyer, mediator or arbitrator with **our** consent for which **you** are obligated. **Claim expenses** also mean:

**1.** The premium on appeal, attachment or similar bond; and

**2.** Up to $250 per day per insured for supplemental payment for reasonable expenses incurred for attendance at hearings, trials, or depositions at **our** request or with our consent by such **insured**. Such payment shall not exceed $5,000 in the aggregate for all **insureds** in each **claim**.

**Claim expenses** do not include:

**1.** Salaries, wages, fees, overhead or benefit expenses associated with any **insured** except as specified in subparagraph **2**. above; or

**2.** Salaries, wages, overhead or benefit associated with **our** employees.

**Company** means the insurance company that issued this policy, as shown on the Declarations page or referred to herein as **we**, **us**, or **our**.

**Computer services** means computers and associated input and output devices, data storage devices, networking equipment, backup facilities, and internet sites operated by and either owned by or leased by any third party for whom **you** provide **professional services**.

**Damages** means monetary judgments, awards or settlements unless otherwise excluded. **Damages** includes (i)pre-judgment interest; and (ii) post judgment interest that accrues after entry of judgment and before **we** have paid, offered to pay or deposited in court that part of judgment within the applicable limit of liability.

**Damages** also means punitive or exemplary **damages** or the multiple portions thereof, if insurable under the applicable law of the jurisdiction most favorable to the insurability of such **damages** provided such jurisdiction is where:

**1.** Those **damages** were awarded or imposed; or

**2.** Any **wrongful act** occurred for which such **damages** were awarded or imposed;

**3.** The **named insured** resides, is incorporated or has its principal place of business; or

**4.** **We** are incorporated or have our principal place of business.

**Damages** do not include any costs or expenses in complying with any demand for or award of **equitable relief**, even if such compliance is compelled as a result of a judgment, award or settlement.

**Defense expenses** means all expenses **you** incur in investigation, defense or appeal of any **disciplinary proceeding**.

**Disciplinary proceeding** means any proceeding by a disciplinary official or agency to investigate or prosecute charges alleging professional misconduct in the performance of **your professional services**.

**Domestic partner** means any natural person granted legal status as a domestic partner under any applicable federal, state or local law or under the provisions of any formal program established by the **named insured**.

**Employment practices** means any actual or alleged:

1. Wrongful termination of the employment of, or demotion of, or failure or refusal to hire or promote any person in violation of law or in breach of any agreement to commence or continue employment;

2. Unlawful employment discrimination;

3. Sexual harassment of an employee or applicant for employment; or

4. Retaliatory treatment against an employee on account of that employee's exercise or attempted exercise of his or her rights under law.

**Equitable relief** means a remedy not involving the payment of monetary damages.

**Extended reporting period** means an additional period of time for reporting **claim(s)**. The **extended reporting period** starts on the **policy termination date** and ends at the **extended reporting period** expiration date.

**First inception date** means the inception date of the first Miscellaneous Professional Liability **policy** issued by **us** to the **named insured** and continually renewed by **us** until the inception date of this current **policy**.

**Insured** means:

1. The **named insured; and:**

2. If **you** are a sole proprietorship, any past or present employee of **yours**, but only while acting on **your** behalf in their capacity as an employee;

3. If **you** are a partnership, any past or present general or managing partner, principal or employee of **yours,** but only while acting on **your** behalf in such capacity;

4. If **you** are a limited liability company, any past or present managing member, principal or employee of **yours,** but only while acting on **your** behalf in such capacity;

5. If **you** are a corporation, any past or present officer, director, trustee, or employee of **yours,** but only while acting on **your** behalf in such capacity;

6. **Your** temporary or leased employees, but only while acting on **your** behalf as an employee;

7. If **you** are a **subsidiary** of the **named insured, you** are only covered while acting on behalf of the **named insured**;

8. **Your** lawful spouse or **domestic partner**, solely for liability arising from any **wrongful act** of an **insured** committed without the participation of such spouse or **domestic partner**;

9. **Your** heirs, assigns and legal representatives in the event of **your** death, incapacity or bankruptcy to the extent that **you** would have been covered; or,

10. An independent contractor for **claims** and **damages under Section A.1, 3, or 4,** but only while acting on **your** behalf  and only if there is a signed agreement executed by the **named insured and** the independent contractor which:

    a) Specifies the services to be performed by the independent contractor on the **named insured's** behalf;

    b) Provides that the services performed by the independent contractor will be under the **named insured's** supervision;

    c) States that the independent contractor will be indemnified by the **named insured** for the services performed on the **named insured's** behalf; and,

    d) Is entered into before the **wrongful act** which leads to a **claim** or **potential claim.**

**Loss** means **claim expenses, damages** and **defense expenses** and does not include **equitable relief**.

**Malicious code** means any virus, trojan horse, worm or similar software program, code or script intentionally designed to insert itself into computer memory.

**Mediation** means the non-binding intervention of a qualified neutral third party chosen by **you** and the other party to a **claim** with agreement by **us**.

**Named insured** means the individual, entity, partnership, or corporation designated as such in the Declarations page.

**Policy** means this **policy** form, the Declarations, and any endorsement to the **policy** issued by **us,** and **your** application, including all supplements.

**Policy period** means the period from the effective date of the **policy** to the expiration date or earlier termination date of the **policy**.

**Policy termination date** means the expiration date of the **policy** as shown on the Declarations page or the cancellation date of the **policy**, whichever is earlier.

**Pollutants** include, but are not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, asbestos, acids, alkalis, chemicals, and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed and nuclear materials.

**Potential claim** means any **wrongful act** or any facts or other circumstances which may subsequently give rise to a **claim.**

**Professional services** means those services described in Item **6.** of the Declarations which **you** perform for others for a fee.

**Property damage** means (1) physical injury to, loss or destruction of, tangible property including the resulting loss of use thereof; or (2) loss of use of tangible property which has not been physically injured or destroyed.

**Retroactive date(s)** refer to the dates shown in Item **5**. of the Declarations.  If no date is shown on the Declarations page the retroactive date will be inception date of the policy.

**Subsidiary** means

1. Any corporation, identified by **you** in the application for this **policy**, of which the **named insured** owns more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly on the inception date of the **policy period;** or

2. Any corporation which becomes a **subsidiary** during the **policy period** provided that such corporation does not represent more than a ten percent (10%) increase in the total assets or gross revenue of the **named insured** as of the date of the acquisition. Where such corporation represents an increase in the total assets or gross revenue of the **named insured** of more than ten percent (10%), such corporation shall be deemed a **subsidiary** under the **policy**, but only upon the condition that within ninety (90) days of its becoming a **subsidiary**, **you** shall have provided **us** with full particulars of the new **subsidiary** and agree to any additional premium and/or amendment of the provisions of this **policy** required by **us** relating to such new **subsidiary**, subject to the review and acceptance by **us** of full and complete underwriting information. Further, coverage as shall be afforded to the new **subsidiary** is conditioned upon the **named insured** paying when due any additional premium required by **us** relating to such new **subsidiary**.  A corporation becomes a **subsidiary** when the **named insured** owns more than fifty percent (50%) of the issued and outstanding voting stock either directly or indirectly, and ceases to be a **subsidiary** at such time when the **named insured** ceases to own more than fifty percent (50%) of the issued and outstanding voting stock.

**Suit** means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading.  **Suit** includes a binding arbitration proceeding in which **damages** are alleged and to which **you** must submit or do submit with **our** consent.

**Unauthorized access** means the use of or access to **computer systems** by a person not authorized to do so by the **Named Insured**; or the use or access to **computer systems** in a manner not authorized by the **named insured.**

**Wrongful act** and **wrongful acts** means any actual or alleged negligent act, error, omission, or misstatement committed in **your professional services**.

## E.  EXCLUSIONS - WHAT THIS POLICY DOES NOT INSURE

This **policy** does not apply to **claim(s)**

1. Based upon, arising out of, or in any way relating directly or indirectly to any **insured**:

   a)  Committing any intentional, dishonest or fraudulent act or omission; or

   b)  Gaining any profit, remuneration or advantage to which such **insured** was not legally entitled;

   provided that this exclusion will not apply until a final adjudication establishes a) or b) above.

2. For any willful or criminal violation of any statute, rule or law.

3. For the return, restitution or reduction of professional fees or arising from any demand for **equitable relief.**

4. Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time;

5. Arising out of **acts of terrorism**,

6. Arising out of **bodily injury** or **property damage**;

7. Arising out of:

    a) Any purchase, sale, or offer or solicitation of an offer to purchase or sell securities;

    b) Any violation of any securities law, including the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or any regulation promulgated under the foregoing statutes, or any federal, state or local laws similar to the foregoing statutes (including "Blue Sky" laws), whether such law is statutory, regulatory or common law; or

    c) Any violation of the Organized Crime Control Act of 1970 (commonly known as Racketeer Influenced And Corrupt Organizations Act, or "RICO"), as amended, or any regulation promulgated thereunder or any federal, state or local law similar to the foregoing, whether such law is statutory, regulatory or common law;

8. Arising out of any breach of fiduciary duty, responsibility, or obligation in connection with any employee benefit or pension plan, including violations of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, or similar statutory or common law of the United States of America or any state or jurisdiction therein;

9. Arising out of any **employment practices** liability or any discrimination on any basis, including, but not limited to: race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy;

10. Arising out of any misappropriation or misuse of trade secret or infringement of patent, copyright, trademark, trade dress or any other intellectual property right;

11. Arising out of false advertising, misrepresentation in advertising, antitrust, unfair competition, restraint of trade, unfair or deceptive business practices, including but not limited to, violations of any local, state or federal consumer protection laws;

12. Against **you** that are brought by or on behalf of any federal, state or local government agency or professional or trade licensing organizations; however, this exclusion shall not apply where the **claim** is alleging a **wrongful act** in **your** rendering **professional services** to such entity or for a **disciplinary proceeding**;

13. Arising out of liability **you** assume under any contract or agreement; however, this exclusion does not apply to liability **you** would have in the absence of such contract or agreement;

14. Against **you** that are brought by or on behalf of:

    a) any business entity that is owned, managed or operated, directly or indirectly, in whole or in part, by **you**;

    b) any parent company, subsidiary, successor or assignee of **yours**, or anyone affiliated with **you** or such business entity through common majority ownership or control; or

    c) any independent contractor supplying material or services to **you**;

15. Arising out of disputes involving**:**

    a) **your** fees or charges, including over-charges, or cost over-runs;

    b) collecting **your** fees from third parties;

    c) the return of fees or other compensation paid to **you**; or

    d) **your** cost of correcting or re-performing or completing any **professional services**;

16. Arising out of **your** advising, requiring, obtaining or failing to advise, require or obtain any bond, suretyship or other form of insurance;

17. Arising out of or resulting, directly or indirectly, from any actual or alleged commingling, misappropriation or improper use of funds or monies

18. Arising out of a **claim** by any **insured** under this **policy** against any other insured under this **policy**.

**F. EXTENDED REPORTING PERIOD**

**1.** **You** will be entitled to an automatic **extended reporting period** for no additional premium. This extension is applicable to any **claim** made against **you** during the **policy period** and reported to **us** in writing, during the sixty (60) days immediately following the **policy termination date**.

**2.** **We** will provide an optional **extended reporting period** as described below:

**a)** If this **policy** is canceled, terminated or non-renewed, **you** shall have the right, upon payment of an additional premium, to an extension of the reporting period for any **claim** against **you** first made and reported after the date upon which the **policy period** ends, but only with respect to **wrongful acts** committed prior to the end of the **policy period** and otherwise covered by this **policy**. Such period shall be referred to as the optional **extended reporting period**.

**1)** The available optional **extended reporting periods** and additional premium are determined in accordance with the rules, rates and rating plans **we** then have in effect in **your** state.

**2)** **You** must request the optional **extended reporting period** in writing and must pay **us** the additional premium within 30 days following the date of such cancellation, termination or nonrenewal. If **we** do not receive **your** request and premium payment within 30 days following the date of such cancellation, termination or non-renewal, **your** right to purchase the optional **extended reporting period** shall cease.

**3)** If **we** cancel for non-payment of premium, **you** may purchase the optional **extended reporting period** only after any earned premium due **us** is paid within 10 days after the date of cancellation or **policy** expiration, whichever comes first.

**b)** All premiums paid for an optional **extended reporting period** shall be deemed fully earned as of the first day of the optional **extended reporting period**. The optional **extended reporting period** may not be canceled.

**c)** The optional **extended reporting period** shall not increase any limits of liability stated in Item **3.** of the Declarations page. For the purpose of **policy** limits, the reporting periods are part of, not in addition to, the **policy period**.

**G. DUTIES IN THE EVENT OF CLAIM(S) OR POTENTIAL CLAIM(S)**

**1.** If **you** receive a **claim**, **you** and any other involved **insured(s)** must see to it that **we** receive written notice of the **claim**, with full details including the date received, as soon as practicable, but in no event later than 90 days after such **claim** is first made.

**2.** **You** and any other involved **insured** must:

**a)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **claim**;

**b)** Authorize **us** to obtain records and other information;

**c)** Cooperate with **us** in the investigation, defense or settlement of the **claim**; and

**d)** Assist **us**, upon our request, in the enforcement of any right against any person or entity which may be liable to **you** because of damages to which this insurance may apply.

**3.** No **insured** will, except at that **insured's** own cost, voluntarily make a payment, assume any obligation, agree to a settlement or incur any expense related to a **claim** without **our** consent.

**4.** If during the policy period, **you** become aware of a **wrongful act** or any facts or other circumstance that occurred on or after the retroactive date but prior to the end of the **policy period**, which may reasonably be expected to subsequently give rise to a claim against **you**, **you** must give **us** written notice as soon as practicable, but in any event not later than the end of the **policy period** or any **extended reporting period,** if applicable. To the extent possible notice should include:

**a)** Where the **wrongful act** took place and any facts or circumstance concerning the wrongful act; and

**b)** The names and addresses of any persons and entities involved.

**5.** Any **claim** arising out of the **wrongful act**, facts or circumstance which is subsequently made against **you** shall be deemed to have been first made at the time **we** received such written notice from **you**, if we receive proper notice of the **potential claim** according to paragraph **4.** above.

The date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

## H. CONDITIONS

### 1. CANCELLATION AND NON RENEWAL

a) **We** may not cancel this **policy** except for failure to pay premium when due, in which case we will give 10 days written notice to the **named insured** before such cancellation is effective.

b) The **named insured** may cancel this **policy** for itself and all other **insureds** by written notice to **us** stating when thereafter the cancellation shall be effective. If this policy is cancelled, earned premium shall be computed in accordance with the customary short rate proportion of the premium.

c) **We** are not required to renew this **policy**. However, written notice of **our** intent to non-renew this **policy** shall be sent to the **named insured** at least 60 days prior to expiration of the **policy period**.

### 2. REPRESENTATIONS AND APPLICATION

By accepting this **policy you** agree that:

a) The statements in the Declarations are accurate and complete;

b) Those statements are based on representations **you** made in **your** application for this insurance **policy**;

c) The representations made in **your** application are the basis of this **policy** and are to be considered as incorporated into and constituting a part of this **policy**;

d) Those representations are material to the acceptance of the risk **we** assumed under this **policy**;

e) **We** have issued this **policy** in reliance upon the truth, accuracy and completeness of such representations;

f) The application shall be interpreted as a separate application for coverage by each **insured.** No statement in the application, fact pertaining to or knowledge possessed by any **insured** shall be imputed to any other **insured** for the purpose of determining if coverage is available; and

g) Statements in the application, facts pertaining to or knowledge possessed by the individual signing the application shall be imputed to the **named insured**.

### 3. LEGAL ACTION AGAINST US

No person or entity has a right under this **policy**:

a) To join **us** as a party or otherwise bring **us** into a suit asking for **damages** from an **insured**; or

b) To sue **us** on this **policy** unless all of its terms have been fully complied with.

A person or entity may sue **us** to recover on an agreed settlement or on a final judgment against an **insured**; but we will not be liable for **damages** that are not payable under the terms of this **policy** or that are in excess of the applicable limit of liability. An agreed settlement means a settlement and release of liability signed by **us**, the **insured** and the claimant or the claimant's legal representative.

### 4. CHANGE IN OWNERSHIP, CONTROL OR EXPOSURE

a) If during the **policy period**:

1) Another person or entity or group of persons or entities acquires more than 50 percent of the assets of the **named insured**; or

2) Another person or entity, or group of persons or entities, acquires an amount of the outstanding securities representing more than 50 percent of the voting power for the election of the **named insured's** directors or trustees; or

3) The **named insured** consolidates with or merges with another entity;
**you** shall notify **us** of the change described in 1., 2., or 3. above, herein referred to as **transaction**, as soon as practicable, but not later than 30 days after the effective date of the **transaction** and provide such additional information as **we** require.

b) If a **transaction** occurs, coverage under this **policy** shall continue until termination of the **policy period** but only with respect to **claims** and **potential claims** made for **wrongful acts** which took place prior to the transaction.

c) If **you** fail to provide notice as described in **4.a.** above, coverage provided to **you** under this **policy** shall terminate as of the date of the **transaction**.

d) The entire premium for this **policy** shall be deemed fully earned upon the occurrence of a **transaction.**

**e)** In the event of a **transaction**, the **named insured** will have the right, upon payment of an additional 75 percent of the premium, to an extension of coverage under the **policy** for a **claim** first made and reported during the 12 months after the **transaction** but, only with respect to any **wrongful act** occurring prior to the **transaction** and otherwise covered by this **policy**. The 12 month period shall be referred to as the run-off period.

    **1)** The premium means the premium in effect immediately prior to the **transaction**.

    **2)** The rights contained in paragraph **4.** shall terminate unless written notice of the election and the additional premium due is received by **us** within 60 days of the **transaction**.

**f)** In the event of a **transaction**, the **named insured** has the right to purchase the run-off period but, has no right to purchase the optional **extended reporting period** described in section F. of the **policy**.

**g)** The additional premium for the run-off period shall be fully earned at the inception of the run-off period. The run-off period is not cancelable.

**h)** The limit of liability for the run-off period is part of and not in addition to the limit of liability in Item **3.** of the Declarations page.

**5. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If **you** have rights to recover all or part of any payment **we** have made under this **policy**, these rights are transferred to **us**. **You** must do nothing after a **loss** to impair our rights to seek or obtain recovery from others. At **our** request, **you** will sue those responsible or transfer those rights to **us** and help **us** enforce them. In the event of any payment under this **policy**, we shall be subrogated to the extent of such payment to all of **your** rights of recovery. **You** shall execute and deliver such instruments and papers and do whatever else is necessary to secure such rights and shall do nothing to prejudice or compromise such rights without **our** express written consent.

**6. ASSIGNMENT**

No change in, modification of or assignment of interest in this **policy** shall be effective except when made by a written endorsement to the **policy**.

**7. SOLE AGENT FOR THE INSURED**

By accepting this **policy**, **you** agree that only the **named insured** is authorized to act on behalf of all **insureds** with respect to the following: consenting to settlement or releasing rights under this **policy**, payment for premiums and deductibles, receiving return premiums, giving or receiving notice of cancellation or nonrenewal, requesting any optional **extended reporting period** or run-off period and agreeing to any changes in this insurance **policy**. Each **insured** agrees that the **named insured** shall act on its or their behalf with respect to such matters.

**8. COVERAGE TERRITORY AND VALUATION**

**a)** This **policy** applies to a **wrongful act** committed anywhere in the world provided that the **claim** is made and suit is brought against the **insured** within the United States, its territories or possessions or Canada.

**b)** All premiums, limits, deductibles, **loss** and other amounts are expressed and payable in the currency of the United States of America. If a judgment is rendered, a settlement is denominated or another element of **loss** under this **policy** is stated in a currency other than the United States of America dollars, payment under this **policy** shall be made in United States of America dollar equivalent determined by the rate of exchange published in the *Wall Street Journal* on the date the judgment becomes final, the amount of the settlement is agreed upon or any element of **loss** is due, respectively.

**9. OTHER INSURANCE**

**a)** If other valid and collectible insurance is available to **you** for **loss** covered under this **policy**, the insurance provided by this **policy** shall be excess over such other insurance, regardless of whether or not such insurance is primary, contributory, excess, contingent or otherwise.

**b)** When this insurance is excess **we** have no duty to defend **you** against any **claim** if any other insurer has a duty to defend **you** against the **claim**. If no other insurer defends **we** will undertake to do so but **we** will be entitled to **your** rights against those other insurers.

**c)** When this insurance is excess over other insurance **we** will pay only our share of the amount of **loss**, if any, that exceeds the sum of:

1) The total amount that all such other insurance would pay for the **loss** in the absence of this insurance;

2) The total of all deductibles, self-insurance and retentions under all that other insurance.

We will share the remaining **loss**, if any, with any other insurance that is not described in this provision and was not bought specifically to apply in excess of the limit of liability shown in the Declarations page of this **policy**.

**d)  Method of Sharing**

If all the other insurance permits contribution by equal shares, **we** will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of liability or none of the **loss** remains, whichever comes first.

If any other insurance does not permit contribution by equal shares, **we** will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of liability to the total applicable limits of liability of all insurers.

**10. TWO OR MORE POLICIES, COVERAGE PARTS, OR ENDORSEMENTS ISSUED BY US**

It is **our** stated intention that this **policy** and any other **policy**, coverage part or endorsement issued by **us**, or by another member of the **company**, shall not provide duplication or overlap of coverage for the same **claim**. If this **policy** and any other **policy** issued by **us**, or by another member of the **company**, to **you**, apply to the same **claim** then, Condition 9. Other Insurance notwithstanding:

**a)**  **We** shall not be liable under this **policy** for a greater proportion of the **loss** than the applicable limit of liability of this **policy** bears to the sum of the total limits of liability of all such policies; and

**b)**  The maximum amount payable under all such policies combined shall not exceed the highest applicable limit of liability under any one **policy**.

**11. ALLOCATION**

If **you** incur both **loss** covered by this **policy** and **loss** not covered by this **policy** on account of any **claim** because such **claim** includes both covered and non-covered matters, coverage with respect to such **claim** shall apply as follows:

**a)**  100 percent of **defense expenses** on account of the **claim** will be considered covered **loss**; and

**b)**  **We** shall fairly allocate all remaining **loss** that you incurred on account of such **claim** between covered **loss** and non-covered **loss**.

**12. SEPARATION OF INSUREDS**

Except with respect to the limits of liability, deductible and any rights or obligations assigned to the first **named insured**, this insurance applies:

**a)**  As if each **insured** were the only **insured**; and

**b)**  Separately to each **insured** against whom a **claim** is made.

**13. CONFORMANCE TO STATUTE**

The terms of this **policy** which are in conflict with the statutes of the state in which this **policy** is issued are amended to conform to those statutes.

**14. SECTION TITLES**

The titling of sections and paragraphs within this **policy** is for convenience only and shall not be interpreted as a term or condition of this **policy**.

**15. BANKRUPTCY**

**You** or **your** estate's bankruptcy or insolvency does not relieve **us** of **our** obligations under this **policy**.

**16. LIBERALIZATION**

If **we** adopt any revisions to the terms and conditions of this **policy** form to provide more coverage without an additional premium charge during the **policy** term, the broadened coverage will immediately apply. However, the broadened terms and conditions will not apply to any **claims** that were first made against **you** prior to the effective date of the revision.

# Customer Notice of Privacy Policy and Producer Compensation Practices Disclosures

## Privacy Policy Disclosure

### *Collection of Information*

We collect personal information so that we may offer quality products and services. This information may include, but is not limited to, name, address, Social Security number, and consumer reports from consumer reporting agencies in connection with your application for insurance or any renewal of insurance. For example, we may access driving records, insurance scores or health information. Our information sources will differ depending on your state and/or the product or service we are providing to you. This information may be collected directly from you and/or from affiliated companies, non-affiliated third parties, consumer reporting agencies, medical providers and third parties such as the Medical Information Bureau.

We, and the third parties we partner with, may track some of the web pages you visit through cookies, pixel tagging or other technologies. We currently do not process or comply with any web browser's "do not track" signals or similar mechanisms that request us to take steps to disable online tracking. For additional information regarding online privacy, please see our online privacy statement, located at www.hanover.com.

### *Disclosure of Information*

We may disclose non-public, personal information you provide, as required to conduct our business and as permitted or required by law. We may share information with our insurance company affiliates or with third parties that assist us in processing and servicing your account. We also may share your information with regulatory or law enforcement agencies, reinsurers and others, as permitted or required by law.

Our insurance companies may share information with their affiliates, but will not share information with non-affiliated third parties who would use the information to market products or services to you.

Our standards for disclosure apply to all of our current and former customers.

### *Safeguards to Protect Your Personal Information*

We recognize the need to prevent unauthorized access to the information we collect, including information held in an electronic format on our computer systems. We maintain physical, electronic and procedural safeguards intended to protect the confidentiality and integrity of all non-public, personal information, including but not limited to social security numbers, driver's license numbers and other personally identifiable information.

### *Internal Access to Information*

Access to personal, non-public information is limited to those people who need the information to provide our customers with products or services. These people are expected to protect this information from inappropriate access, disclosure and modification.

### *Consumer Reports*

In some cases, we may obtain a consumer report in connection with an application for insurance. Depending on the type of policy, a consumer report may include information about you or your business, such as:

• character, general reputation, personal characteristics, mode of living;

• credit history, driving record (including records of any operators who will be insured under the policy); and/or

• an appraisal of your dwelling or place of business that may include photos and comments on its general condition.

### *Access to Information*

Upon written request, we will inform you if we have ordered an investigative consumer report. You have the right to make a written request within a reasonable period for information concerning the nature and scope of the report and to be interviewed as part of its preparation. You may obtain a copy of the report from the reporting agency and, under certain circumstances, you may be entitled to a copy at no cost.

You also may review certain information we have about you or your business in our files. To review information we maintain in our files about you or your business, please write to us, providing your complete name, address and policy number(s), and indicating specifically what you would like to see. If you request actual copies of your file, there may be a nominal charge.

We will tell you to whom we have disclosed the information within the two years prior to your request. If there is not a record indicating that the information was provided to another party, we will tell you to whom such information is normally disclosed.

There is information that we cannot share with you. This may include information collected in order to evaluate a claim under an insurance policy, when the possibility of a lawsuit exists. It may also include medical information that we would have to forward to a licensed medical doctor of your choosing so that it may be properly explained.

### Correction of Information

If after reviewing your file you believe information is incorrect, please write to the consumer reporting agency or to us, whichever is applicable, explaining your position. The information in question will be investigated. If appropriate, corrections will be made to your file and the parties to whom the incorrect information was disclosed, if any, will be notified. However, if the investigation substantiates the information in the file, you will be notified of the reasons why the file will not be changed. If you are not satisfied with the evaluation, you have the right to place a statement in the file explaining why you believe the information is incorrect. We also will send a copy of your statement to the parties, if any, to whom we previously disclosed the information and include it in any future disclosures.

### Our Commitment to Privacy

In the insurance and financial services business, lasting relationships are built upon mutual respect and trust. With that in mind, we will periodically review and revise our privacy policy and procedures to ensure that we remain compliant with all state and federal requirements. If any provision of our privacy policy is found to be non-compliant, then that provision will be modified to reflect the appropriate state or federal requirement. If any modifications are made, all remaining provisions of this privacy policy will remain in effect. For more detailed information about our customer privacy policy (including any applicable state-specific policies) and our online privacy statement, visit our Web site, located at www.hanover.com.

### Further Information

If you have questions about our customer privacy policy (including any applicable state-specific policies) or our online privacy statement, or if you would like to request information we have on file, please write to us at our Privacy Office, N435, The Hanover Insurance Group, Inc., 440 Lincoln Street, Worcester, MA 01653. Please provide your complete name, address and policy number(s). A copy of our Producer Compensation Disclosure is also available upon written request addressed to the attention of the Corporate Secretary, N435, The Hanover Insurance Group, 440 Lincoln Street, Worcester, MA 01653.

### Producer Compensation Disclosure

Our products are sold through independent agents and brokers, often referred to as "Producers." We may pay Producers a fixed commission for placing and renewing business with our company. We may also pay additional commission and other forms of compensation and incentives to Producers who place and maintain their business with us. Details of our Producer compensation practices may be found at www.hanover.com.

This notice is being provided on behalf of the following Hanover Companies: The Hanover Insurance Group, Inc. - Allmerica Financial Alliance Insurance Company - Allmerica Financial Benefit Insurance Company - Allmerica Plus Insurance Agency, Inc. - Citizens Insurance Company of America - Citizens Insurance Company of Illinois - Citizens Insurance Company of the Midwest - Citizens Insurance Company of Ohio - Citizens Management, Inc. - AIX Ins. Services of California, Inc.- Campania Insurance Agency Co. Inc. - Campmed Casualty & Indemnity Co. Inc. - Chaucer Syndicates Limited- Educators Insurance Agency, Inc.- Hanover Specialty Insurance Brokers, Inc. - The Hanover American Insurance Company - The Hanover Insurance Company - The Hanover New Jersey Insurance Company - The Hanover National Insurance Company - Hanover Lloyd's Insurance Company - Massachusetts Bay Insurance Company - Opus Investment Management, Inc. - Professionals Direct Insurance Services, Inc. -Professional Underwriters Agency, Inc. - Verlan Fire Insurance Company - Nova Casualty Company - AIX Specialty Insurance Company.



## U.S. TREASURY DEPARTMENT'S
## OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

## ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this notice carefully.**

The Office of Foreign Assets Control ("OFAC") administers and enforces sanctions policy, based on Presidential Declarations of National Emergency.

OFAC has identified and listed numerous foreign agents, front organizations, terrorists, terrorists organizations, and narcotic traffickers as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site: http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated United States sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC.

Other limitations on the premiums and payments also apply.



**NOTICE TO POLICYHOLDERS:**
**MISCELLANEOUS PROFESSIONAL LIABILITY INSURANCE**

**INFORMATION REGARDING EXTENDED**
**REPORTING PERIOD ENDORSEMENT**
**("ERP COVERAGE")**

The enclosed policy provides coverage for claims reported during the policy period. Subject to the policy's terms and conditions, you may purchase an Extended Reporting Period Endorsement, also known as "ERP coverage", that will extend the time for reporting claims arising out of professional services rendered while the policy was still in effect, although the policy may have been cancelled, nonrenewed, or terminated. Please refer to Section F. of your policy for the terms and conditions for eligibility, purchasing or obtaining an Extended Reporting Period endorsement. *There is a limited time for requesting such an endorsement.*

The premium charged for the endorsement is expressed as a percentage of your policy's annual premium.

| Length of "ERP Coverage" Offered | "ERP Coverage" Premium |
|---|---|
| 12 months | 100 % of expiring annual premium |
| 24 months | 150 % of expiring annual premium |
| 36 months | 200 % of expiring annual premium |

*Extended Reporting Period Endorsements may be subject to state regulatory requirements.*

Please contact your agent or customer service representative for pricing specific to your situation and location.

# OREGON MISCELLANEOUS PROFESSIONAL LIABILITY AMENDATORY ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Issued by The Hanover Insurance Company.

This endorsement modifies the following:

**A.** **SECTION H – CONDITIONS**, Paragraph **1. a)** is replaced by the following:

    **a)** **We** may not cancel this **policy** except for failure to pay premium when due. Cancellation will not be effective until at least 10 business days after the **Named Insured** receives **our** notice.

**B.** The following is added to **SECTION H – CONDITIONS,** Paragraph **1. Cancellation and Non Renewal**:

    **d)** Notices of cancellation or nonrenewal will be sent by first class mail to the **Named Insured** and the producer of record at the last addresses known to **us**; stating the effective date of cancellation or nonrenewal and the specific reasons for cancellation or nonrenewal. A post office certificate of mailing will constitute proof that the **named insured** received notice on the third calendar day after the date of the certificate of mailing.

    **e)** If **we** decide to offer renewal terms, notice will be mailed to the **Named Insured** and the producer of record by first class mail, at least 45 days prior to the expiration of the **policy**.

All other terms and conditions remain unchanged.

# LIMITED DISCRIMINATION COVERAGE ENDORSEMENT
# – PROFESSIONAL SERVICES

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Named Insured: HUMAN RESOURCE ADVANTAGE LLC                Policy Number: LHF-A403590-02

Issued by The Hanover Insurance Company.

This endorsement, effective 12:01 A.M. 09/26/2016 modifies the following:

**SECTION E – EXCLUSION**, Paragraph **9.** is replaced by the following:

9.  Arising out of any **employment practices** liability or any discrimination on any basis, including, but not limited to:  race, creed, color, religion, ethnic background, national origin, age, handicap, disability, gender, sexual orientation or pregnancy;

However, **we** will pay on **your** behalf **damages** and **claim expenses** incurred in the responding to a **claim** made against **you** and reported to **us** in writing during the **policy period**, or **extended reporting period**, if applicable, that arise from your **professional services** and for discrimination by **you** because of race, creed, color, age, gender, sex, sexual preference or orientation, national origin, religion, disability, handicap, marital status, or any other class protected under federal, state, local, or other law.

Notwithstanding anything to the contrary in the **policy**, including any endorsements thereto:

**Our** aggregate Limit of Liability for **damages** and **claim expenses** arising out of all discrimination **claims** covered under this endorsement is $250,000 which amount will be included within, and not in addition to, the aggregate Limit of Liability set forth in **Item 3. b.** of the Declarations.

All other terms and conditions remain unchanged.

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

**In Witness Whereof,** this company has caused this policy to be signed by its President and Secretary and countersigned on the declarations page, where required, by a duly authorized agent of the company.

Frederick H. Eppinger
President

Charles Frederick Cronin
Secretary

# EXHIBIT C

1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   JORDON E. HARRIMAN, SB# 117150
2    E-Mail: Jordon.Harriman@lewisbrisbois.com
   633 West 5th Street, Suite 4000
3  Los Angeles, California 90071
   Telephone: 213.250.1800
4  Facsimile: 213.250.7900

5  Attorneys for Defendant, HANOVER
   INSURANCE COMPANY

6

7

8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11 | HUMAN RESOURCE ADVANTAGE, LLC | Case No. 1:21-CV-01610-JLT-BAM
   | AND DEBBIE BROWNLEE,

12 |                                | **DECLARATION OF KELLY OGNIBENE**
   |           Plaintiffs,

13 |                                | [Filed Concurrently with HANOVER'S
   |    vs.                         | MOTION FOR SUMMARY JUDGMENT,
14 |                                | OR IN THE ALTERNATIVE, SUMMARY
   | THE HANOVER INSURANCE COMPANY, | ADJUDICATION; STATEMENT OF
15 |                                | UNDISPUTED FACTS; MEMORANDUM
   |           Defendants.          | OF POINTS AND AUTHORITIES IN
16 |                                | SUPPORT OF SUMMARY JUDGMENT, OR
   |                                | IN THE ALTERNATIVE, SUMMARY
17 | THE HANOVER INSURANCE COMPANY, | ADJUDICATION]

18 |           Counter-Claimants,   | Date: June 9, 2023
   |                                | Time: 9:00 a.m.
19 |    vs.

20 | HUMAN RESOURCE ADVANTAGE, LLC  | Judge: Jennifer L. Thurston
   | AND DEBBIE BROWNLEE,           | Robert E. Coyle United States Courthouse,
21 |                                | Courtroom 4, 7th Floor
   |           Counter-Defendants.
22 |                                | Pretrial Conf.: October 6, 2023
   |                                | Trial Date: December 3, 2023

23      I, Kelly Ognibene, declare as follows:

24      1.    I am an attorney duly admitted to practice in the State of Illinois, am admitted to

25 practice in the Eastern District of California *pro hac vice* in the instant matter, and I am a partner

26 with Lewis Brisbois Bisgaard & Smith LLP, attorneys of record for Defendant/Counter-

27 Complainant The Hanover Insurance Company ("Hanover") herein. The facts set forth herein are

28 of my own personal knowledge, and if sworn I could and would competently testify thereto.

94484561.1

2.     On January 19, 2023, I received from Plaintiffs' counsel, Plaintiffs' Supplemental Response to Hanover's Request for Production Set One and Plaintiffs' document production Bates numbered HRA000001-000116.

3.     Attached hereto as Exhibit 1 is a true and correct copy of the documents produced in this action by Plaintiffs on January 19, 2023, Bates numbered HRA000095-000106.

4.     Attached hereto as Exhibit 2 is a true and correct copy of the document produced in this action by Plaintiffs on January 19, 2023, Bates numbered HRA000056.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on this 5th day of May, 2023, at Chicago, Illinois.

*Kelly Ognibene*
_____

Kelly Ognibene



DECLARATION OF KELLY OGNIBENE IN SUPPORT OF HANOVER'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION

# EXHIBIT C-1

**(Ex 1 to Ex C – Ognibene Declaration)**

## HUMAN RESOURCE ADVANTAGE, LLC
Phone: 800.232.9214  Fax: 800.972.9214

### FAX COVER SHEET FOR BACKGROUND ORDERS

To:  Human Resource Advantage, LLC

Fax:  800.972.9214        Email: dab@hrallc.com

From: Symmetry Elevating Solutions        Phone: 559-298-0502
Company Name

Requestor Name: Brian Nichols        Email: brian @ symmetrycs.com

Criminal Records Search ☒

Social Security Trace ☐

Driving Record ☐

Federal Criminal Search ☒

Sex Offender Registry ☐

Civil Filings Search ☐

Employment History ☒

Education Verification ☒

Workers' Comp Search ☒

NOTE

**PLEASE BE SURE THAT ON THE CONSENT FORM THE CANDIDATE'S PRINTED DATA IS *CLEAR* AND *LEGIBLE*.**

Additional notes or instructions:

HRA000095



**Human Resource Advantage, LLC**

2055 SE Pecos Drive
Madras, OR 97741
v 800-232-3214, x704
f 800-972-9214

2055 SE Pecos Dr, Madras, OR 97741

## CONFIDENTIAL

**Requested:** 10/06/14                                    **Printed:** 10/15/14

**Employment Background Check Report**                    **Completed:** 10/15/14

**Provided To:**  Symmetry Elevating Solutions

**Attention:**  Robbie Van Patten

**Subject:**  Marshall, Brandi                          **SS #:** XXX-XX-0742

**Address:**  Lemoore, CA  93245

FILE

## COURT SEARCH RECORD

```
FRESNO, CA
----------
Search Type:    Felony and Misdemeanor, 7
Court Searched: FRESNO
No Court Records found in the jurisdictions searched.
(7-year history search)


KINGS, CA
---------
Search Type:    Felony and Misdemeanor, 7
Court Searched: KINGS
No Court Records found in the jurisdictions searched.
(7-year history search)


ARLINGTON, VA
-------------
Search Type:    Felony and Misdemeanor, 7 Years
Court Searched: County Seat
No Court Records found in the jurisdictions searched.
(7-year history search)
```

Subject: Marshall, Brandi

Client:  Symmetry Elevating Solutions

Human Resource Advantage, LLC

Page  2

## EMPLOYMENT HISTORY

**EMPLOYER NAME:  St. Mary's Court Housing Development**

```
Location:            Washington, DC
Contact:             Margaret Pulley
Employment Dates:    10/2012 - 02/2014
Ending Title:        Director of Housing Ops
Ending Pay:          Undisclosed
```

**EMPLOYER NAME:  Courtyard by Marriot**

```
Location:            Fresno, CA
```

Researcher's Comments:
----------------------
This employer contracts with The Work Number, a 3rd-party, for its employment
verifications.  There is no record found on the database matching this SSN with
this employer.  The verification is system-generated with data that originates
directly from the employer's payroll system.
We also called the business and were told that Courtyard at the airport was
acquired by Best Western in 2013.

## EDUCATION

**INSTITUTION NAME:  Fresno Pacific University**

```
Location:    Fresno, CA

Dates Attended:      09/01/2003 - 12/31/2003
Major:               Undisclosed
Degree / Diploma:    No degree - enrollment only
```

Confirmed By National Student Clearinghouse

## SOCIAL TRACE

```
BRANDI N PERSZYK                              SS:  55243xxxx
1745 N WINERY AVE UNIT 102
FRESNO, CA  93703                               COUNTY: FRESNO
RPTD: 11/2007 TO 09/2014     DOB: 07/25/1976  AGE: 38

                                              SS:  55243xxxx
BRANDI N MARSHALL
170 WARNER ST                                   COUNTY: SAN DIEGO
OCEANSIDE, CA  92058
RPTD: 05/2000 TO 09/2014     DOB: 07/25/1976  AGE: 38

                                              SS:  55243xxxx
BRANDI N PERSZYK
229 SMITH AVE                                   COUNTY:
LEMOORE, CA  93245
```

HRA000097

**Subject:** Marshall, Brandi

Human Resource Advantage, LLC

**Client:** Symmetry Elevating Solutions

Page 3

```
KINGS
RPTD: 01/2013 TO 10/2013            DOB: 07/25/1976     AGE: 38

                                                     SS: 55243xxxx
BRANDI N MARSHALL
1745 N WINERY AVE APT 102                            COUNTY: FRESNO
FRESNO, CA  93703
RPTD: 11/2007 TO 09/2013            DOB: 07/25/1976    AGE: 38

                                                     SS: 55243xxxx
BRANDI N PERSZYK
170 WARNER ST                                   COUNTY: SAN DIEGO
OCEANSIDE, CA  92058
RPTD: 05/2000 TO 01/2013            DOB: 07/25/1976    AGE: 38

-----------------------------------------------------------------------
SS# IS VALID, ISSUED IN CALIFORNIA, BETWEEN 01/1976 AND 12/1976


   END OF SSN HISTORY
```

## Federal Criminal Case Search

```
Federal Criminal Courts Search: 7-year, CA, VA, and DC Party/Case Locater Index
NO RECORD FOUND matching by name and DOB.
```

## End Of Report

# Human Resource Advantage, LLC

2055 SE Pecos Drive
Madras, OR 97741
v 800-232-3214, x704
f 800-972-9214

---

### DISCLAIMERS

While some of the information contained in this report has been obtained from public records data sources deemed reliable, its accuracy cannot be guaranteed due to potential human error in the actual recording of the record.  Since this information is not owned by HRA, and since public records data on any one individual, group of individuals, company, or companies can be contained in more than one repository, HRA can only rely on its accuracy from the public records data sources presently available at the time of the search.  You, the employer, agree to indemnify HRA, its sources, agents, and employees of any liability for the use of this information and shall agree that the right to obtain and the purpose for this information, for you exclusive use, is fully within the appropriate law or laws which apply to the permissible purpose of retrieving background information on an individual.

The information in this report is derived in accordance with the Fair Credit Reporting Act (FCRA).  This information may only be used to verify statements made by an individual for employment purposes.

Unless otherwise directed by the employer/client, any "Aka's," either provided by the applicant or obtained from public records (SSN trace history, credit report, etc.), are included as an additional name search for each county criminal records search.  HRA believes this action will help ensure that the employer conducts a thorough "due diligent" background search.

Repositories and databases accessed, and other providers of public information contacted for information on this candidate for inclusion in this background report have been vetted by HRA and have proved to be accurate and timely.

*[handwritten, top right: "BDW Notes"]*

# Brandi Marshall

229 Smith Ave, Lemoore, CA
Home 559-924-5768, email: marshall082806@gmail.com

## Summary

Administrative support professional with more than 10 years of experience; adept at working in fast-paced environments, with demanding strong organizational leadership and interpersonal skills. Committed to exceptional customer service and driven by challenges. Detail-oriented and resourceful in spearheading, organizing and completing projects; ability to multitask effectively.

## Experience

*[handwritten left margin: "10.6 Marvin LM"]*
*[handwritten: "Margaret Pulley 202·223·5712 if didn't have other interviews would hire right away."]*

**St. Mary's Court Housing Development, Washington, DC**
**Director of Housing Operations – 10/12 – 2/2014**
All non-profit accounting and bookkeeping functions. Supervised Accounts Receivable and Human Resource department.
- Oversee Accounts Payable function, including direct supervision of A/R specialist, oversee general ledger activities, including preparation and review of accounts reconciliations, assist in preparation of financial analysis, maintain fixed asset records, and assist in developing and refining accounting processes and procedures.
- Oversee payroll function, including payroll processing in conjunction with payroll service, administer pension and Health Insurance plans, and serve as company H/R representative.
- Report to a board of 15 members twice a month regarding financial position

*[handwritten left margin: "10.7 This hotel bought by Best Western last year"]*

**Courtyard By Marriott – Fresno Yosemite International Airport, Fresno, CA** *[handwritten: "WK# - NO $21-6000 ask for Mgr"]*
**AGM/Controller/Director of Human Resources- 12/2005 - 08/2011**
Duties included budgeting, revenue management, journal entries, reporting, A/P, A/R, recruiting, policies, procedures, etc.
- Manage all day to day hotel operations including front desk, engineering, housekeeping, & F&B
- Perform all Controller duties including A/P, A/R, daily deposits, journal entries, night audit, month end closing, and many monthly reports to corporate office.
- Performed Revenue Management duties including forecasting, flow reports, budgeting, and reporting.
- Performed all Human Resource duties including implementing policies, surveys, corrective actions, terminations, recruiting, all payroll functions, and monthly reporting to corporate office.

**Borba Agri-business, Riverdale, CA**
**Assistant Controller/Accountant – 12/2002 – 11/2005**
All accounting and bookkeeping functions for 32 companies. Administer employee payroll, company taxes, and many other payroll functions.
- Assist controller with budgets, position reports, cost accounting and setting up new bookkeeping procedures.
- Maintain general ledgers; reconcile bank statements, update cash flow, accounts receivable and accounts payable for 39 companies.
- Responsible for weekly, monthly, quarterly, and yearly tax reports, workers comp reports, and setting up employee deductions.

**Total Pay Management, Kingsburg, CA**
**Payroll/Tax Manager – 12/2001 – 12/2002**
Processed payroll for up to 50 companies at any one given time. Reviewed timesheets, set p direct deposits garnishments, 401K, and section 125 plans. Ran checks on a weekly, bi-weekly, semi-weekly, and monthly schedule.
- Promoted within company to Tax Manager. Responsible for 2000 companies. Multi-state tax deposits, quarterly and yearly returns, ACH, funds transfer, and updating procedure manuals.
- Promoted within company to Conversion Manager. Company changed software programs and I lead a team of 5 to convert all 2000 companies to new software. Also trained customers and created procedure manuals.

*[handwritten stamp: "OCT 06 2014"]*

## Education

Fresno Pacific University, Fresno, CA -B.A., Management and Organizational Development
U.S. Army – MOS67T – Blackhawk Crew Chief (served in Iraq War)

## Computer Knowledge

Advance Excel, Advanced QuickBooks, Sage, Microsoft Office, Oracle, Famous, MAS90, People Soft, Paychex, ADP PeopleSoft, Millennium, Apple Computers, PC Computers, ICAMS

HRA000100

NOTIFICATION, AUTHORIZATION, CONSENT TO RELEASE OF INFORMATION

Symmetry Elevating Solutions ("the Company") has retained Human Resource Advantage, LLC ("the Agency") to conduct a background check and prepare an investigative consumer report on you in connection with your application for employment. The Agency's address and telephone number are: HRA, 2055 SE Pecos Drive, Madras, OR, 97741, 800.232.9214.

- In the course of its investigation of you, the Agency may request and receive reports and/or information concerning you from, but not limited to, companies, former employers, licensing agencies, governmental agencies, educational institutions, military branch services, consumer reporting agencies, as well as criminal and driving records.
- The investigative consumer report concerning me may include information about my character in the work place.
- If you are a resident of California, you are entitled under the Fair Credit Reporting Act, California Consumer Credit Reporting Act to a free copy of any investigative consumer report the Company obtains on you.
- You are entitled to a copy of "Your Rights Under the Fair Credit Reporting Act."
- If adverse action is taken against you in whole or in part on the basis of the contents of the investigative consumer report, state and federal laws require the Company to give you notice of that fact as well as a copy of the investigative consumer report prepared on you.
- You have the right to dispute the accuracy or contents of the investigative consumer report directly with the Agency that prepared the report. To do so, you must notify the Agency noted above.
- The nature and scope of the investigation to be conducted on you may include one or more of the following: social security number trace, DMV history, criminal records search (may include county, federal, and sex offender registry), education and employment verification, civil filings search search, workers' comp history.
- You may request (a) the information contained in your consumer file, (b) the sources of that information, (c) the identity of each person who procured a report.
- You have the right to visually inspect the file maintained on you by the Agency. Requests to obtain a copy of your file must be made by certified mail. The written request, with proper identification, for copies must include a specified addressee and address. Alternatively, you may obtain a summary of all information contained in your file by telephone, if you have made a written request, with proper identification, for a telephone disclosure.
- By signing below, you request and authorize all persons who have information relevant to this investigation to disclose such information, as may be requested.

CLEARLY PRINT ALL INFORMATION        FULL NAME **AS IT APPEARS ON YOUR DRIVER'S LICENSE OR ID**

First name: Brandi          Middle name:          Last name: Marshall

Any other name(s) used (including maiden name):

Social security number: 551,42,0742        Driver's License number: B3743494    State: CA        *Date of birth: 07,25,76

Telephone number: (559) 924-5768          *DOB is required for ID only and in no manner used as qualifying for joining the Company.

Current address: 229 Smith Ave    Lemoore CA 93245

LIST ALL OTHER CITY(s) AND STATE(s) OF RESIDENCE IN THE LAST SEVEN YEARS

| City / State / Zip | Dates from/to |
|---|---|
| Arlington, VA 22202 | From 2012 to 2014 |
| Fresno, CA 93727 | From 2007 to 2011 |
| | From _____ to _____ |

I HAVE READ THIS NOTIFICATION, AUTHORIZATION, CONSENT TO RELEASE OF INFORMATION; I FULLY UNDERSTAND THE TERMS OF THIS RELEASE; AND I AUTHORIZE PROCUREMENT OF THE CONSUMER INVESTIGATIVE REPORT.

Signature: _____        Date: 10-4-14

☐ California, Minnesota, or Oklahoma residents check here if you wish a free copy of this report mailed to the current address supplied above.

HUMAN RESOURCE ADVANTAGE, LLC
Phone: 800.232.9214  Fax: 800.972.9214

FAX COVER SHEET FOR BACKGROUND ORDERS

To: Human Resource Advantage, LLC

Fax:  800.972.9214    Email: dab@hralic.com

From: _Symmetry Elevator Solutions_ Phone: _559-298-0502_
Company Name                                            _559-907-1000_

Requestor Name: _Brian Nichols_        Email: _brian @ symmetryes.com_

Criminal Records Search ☒
Social Security Trace ☒ ✓
Driving Record ☐                                    _Nicole Marshall_
Federal Criminal Search ☒ @  _CA & VA_           _Perszyk_
Sex Offender Registry ☐
Civil Filings Search ☒ ⊘
Employment History ☒
Education Verification ☐                           _Civil_
Workers' Comp Search ☐

NOTE

PLEASE BE SURE THAT ON THE CONSENT FORM THE CANDIDATE'S PRINTED DATA
IS CLEAR AND LEGIBLE.

Additional notes or instructions:

_Please make search._
_+15 yrs back_

_$45⁰⁰_

_Also Requesting Credit report /_
_Credit history._

HRA000102

NOTIFICATION, AUTHORIZATION, CONSENT TO RELEASE OF INFORMATION    *Credit check*

MAR 3 0 2016

Symmetry Elevating Solutions ("the Company") has retained Human Resource Advantage, LLC ("the Agency") to conduct a background check and prepare an investigative consumer report on you in connection with your application for employment. The Agency's address and telephone number are: HRA, 2055 SE Pecos Drive, Madras, OR, 97741, 800.232.9214.

- In the course of its investigation of you, the Agency may request and receive reports and/or information concerning you from, but not limited to, companies, former employers, licensing agencies, governmental agencies, educational institutions, military branch services, consumer reporting agencies, as well as criminal and driving records.
- The investigative consumer report concerning me may include information about my character in the work place.
- If you are a resident of California, you are entitled under the Fair Credit Reporting Act, California Consumer Credit Reporting Act to a free copy of any investigative consumer report the Company obtains on you.
- You are entitled to a copy of "Your Rights Under the Fair Credit Reporting Act."
- If adverse action is taken against you in whole or in part on the basis of the contents of the investigative consumer report, state and federal laws require the Company to give you notice of that fact as well as a copy of the investigative consumer report prepared on you.
- You have the right to dispute the accuracy or contents of the investigative consumer report directly with the Agency that prepared the report. To do so, you must notify the Agency noted above.
- The nature and scope of the investigation to be conducted on you may include one or more of the following: social security number trace, DMV history, criminal records search (may include county, federal, and sex offender registry), education and employment verification, civil filings search search, workers' comp history.
- You may request (a) the information contained in your consumer file, (b) the sources of that information, (c) the identity of each person who procured a report.
- You have the right to visually inspect the file maintained on you by the Agency. Requests to obtain a copy of your file must be made by certified mail. The written request, with proper identification, for copies must include a specified addressee and address. Alternatively, you may obtain a summary of all information contained in your file by telephone, if you have made a written request, with proper identification, for a telephone disclosure.
- By signing below, you request and authorize all persons who have information relevant to this investigation to disclose such information, as may be requested.

CLEARLY PRINT ALL INFORMATION    FULL NAME AS IT APPEARS ON YOUR DRIVER'S LICENSE OR ID

First name: Brandi    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    Middle name: Perszyk    Last name: Marshall

Any other name(s) used (including maiden name): 551, 42, 0742

Social security number: 551, 42, 0742    Driver's License number: B3743494    State: CA    *Date of birth: 07, 25, 76

Telephone number: 559, 924-5768    *DOB is required for ID only and in no manner used as qualifying for joining the Company.

Current address: 229 Smith Ave    Lemoore CA 93245

LIST ALL OTHER CITY(s) AND STATE(s) OF RESIDENCE IN THE LAST SEVEN YEARS

| City / State / Zip | Dates from/to | Kings @ |
|---|---|---|
| Arlington, VA 22202 | From 2012 to 2014 | Fresno  S. Diego |
| Fresno, CA 93727 | From 2007 to 2011 | Arlington VA @ |
| | From _____ to _____ | |

I HAVE READ THIS NOTIFICATION, AUTHORIZATION, CONSENT TO RELEASE OF INFORMATION; I FULLY UNDERSTAND THE TERMS OF THIS RELEASE; AND I AUTHORIZE PROCUREMENT OF THE CONSUMER INVESTIGATIVE REPORT.

Signature: _____    Date: 10-4-14

☐ California, Minnesota, or Oklahoma residents check here if you wish a free copy of this report mailed to the current address supplied above.

HRA000103

**HRA**
**RESOURCE**
**ADVANTAGE**
2055 SE Pecos Dr, Madras, OR  97741

Human Resource Advantage LLC
2055 SE Pecos Drive
Madras, OR 97741
v 800-232-3214, x704
f 800-972-9214

# CONFIDENTIAL

**Requested:** 03/30/16                                    **Printed:** 04/06/16

## Employment Background Check Report        **Completed:** 04/05/16

**Provided To:**   Symmetry Elevating Solutions

**Attention:**    Robbie Van Patten

---

**Subject:**   Marshall, Brandi Nicole            **SS #:** XXX-XX-0742

**Address:**   Lemoore, CA  93245

**A.K.A.:** Perszyk, Brandi / Marshall, Brandi

---

## COURT SEARCH RECORD

```
FRESNO, CA
----------
Search Type:     Felony and Misdemeanor, 7 Years
Court Searched:  County Seat
Additionally, no Court Records found matching the AKA in the jurisdictions
searched.
(7-year history search)


KINGS, CA
---------
Search Type:     Felony and Misdemeanor, 7 Years
Court Searched:  County Seat
Additionally, no Court Records found matching the AKA in the jurisdictions
searched.
(7-year history search)


SAN DIEGO, CA
-------------
Search Type:     Felony and Misdemeanor, 7 Years

COURT:           County Seat
CASE NUMBER:     CN315833          Felony
DATE OF OFFENSE: 02/20/13
CHARGE(S):       1. Pc508 Embezzlement, Felony.
                 2. Pc487(A) Grand Theft, Felony.
                 3. Pc530.5(A) Unlawful Use Of Personal Identifying
                 Information, Felony.
                 4. Pc470(B) Forgery : License/Id, Felony.
                 5. Pc470(B) Forgery : License/Id, Felony.
                 6. Pc470 Forgery, Felony.
```

**HRA000104**

        7. Pc470 Forgery, Felony.
        8. Pc470 Forgery, Felony.
        9. Pc470 Forgery, Felony.

DISPOSITION DATE:    /  /
DISPOSITION:        1. Order For Arrest, 02/20/2013 Failed To Appear - Warrant
                    Issued In The Amount Of $100,000.00 - Active.
                    2. Order For Arrest, 02/20/2013 Failed To Appear - Warrant
                    Issued In The Amount Of $100,000.00 - Active.
                    3. Order For Arrest, 02/20/2013 Failed To Appear - Warrant
                    Issued In The Amount Of $100,000.00 - Active.
                    4. Order For Arrest, 02/20/2013 Failed To Appear - Warrant
                    Issued In The Amount Of $100,000.00 - Active.
                    5. Order For Arrest, 02/20/2013 Failed To Appear - Warrant
                    Issued In The Amount Of $100,000.00 - Active.
                    6. Order For Arrest, 02/20/2013 Failed To Appear - Warrant
                    Issued In The Amount Of $100,000.00 - Active.
                    7. Order For Arrest, 02/20/2013 Failed To Appear - Warrant
                    Issued In The Amount Of $100,000.00 - Active.
                    8. Order For Arrest, 02/20/2013 Failed To Appear - Warrant
                    Issued In The Amount Of $100,000.00 - Active.
                    9. Order For Arrest, 02/20/2013 Failed To Appear - Warrant
                    Issued In The Amount Of $100,000.00 - Active.

IDENTIFIERS ON
    RECORD FILE:   Name On File: Marshall, Brandi
                   DOB On File: 07/25/1976


ARLINGTON, VA
-------------
Search Type:      Felony and Misdemeanor, 7 Years
Court Searched:   Arlington
Additionally, no Court Records found matching the AKA in the jurisdictions
searched.
(7-year history search)


| SOCIAL TRACE |
| --- |

BRANDI N PERSZYK                                          SS:  55243xxxx
650 N CHERRY LN
CLOVIS, CA  93611                                            COUNTY: FRESNO
RPTD: 07/2015 TO 03/2016         DOB: 07/25/1976    AGE: 39

BRANDI N MARSHALL                                        SS:  55243xxxx
229 SMITH AVE
LEMOORE, CA  93245                                           COUNTY: KINGS
RPTD: 01/2013 TO 03/2016         DOB: 07/25/1976    AGE: 39

BRANDI N MARSHALL                                        SS:  55243xxxx
650 N CHERRY LN
CLOVIS, CA  93611                                            COUNTY: FRESNO
RPTD: 07/2015 TO 11/2015         DOB: 07/25/1976    AGE: 39

BRANDI N PERSZYK                                         SS:  55243xxxx
229 SMITH AVE

HRA000105

LEMOORE, CA  93245
RPTD: 01/2013 TO 06/2015                 DOB: 07/25/1976        COUNTY: KINGS
                                                               AGE: 39

BRANDI N MARSHALL
170 WARNER ST                                              SS:  55243xxxx
OCEANSIDE, CA  92058
RPTD: 05/2000 TO 12/2014                 DOB: 07/25/1976        COUNTY: SAN DIEGO
                                                               AGE: 39

BRANDI N PERSZYK
170 WARNER ST                                              SS:  55243xxxx
OCEANSIDE, CA  92058
RPTD: 05/2000 TO 01/2013                 DOB: 07/25/1976        COUNTY: SAN DIEGO
                                                               AGE: 39

-----------------------------------------------------------------------------

SS# IS VALID, ISSUED IN CALIFORNIA, BETWEEN 01/1976 AND 12/1976

END OF SSN HISTORY

## FEDERAL CRIMINAL CASE SEARCH

Federal Criminal Courts Search: 7-year, CA and VA Party/Case Locater Index
NO RECORD FOUND matching by name(s) and DOB.

## CIVIL FILINGS

BRANDI PERSZYK
Address: 1452 MONARCH DR, LEMOORE, CA 93245-1786 (Kings COUNTY)
Plaintiff: COUNTY OF KINGS
Filing Type: COUNTY TAX LIEN RELEASE
Total Lien Amount: $145
Court Case Number: 0822299
Filing Date: 10/04/2007
Release Date: 12/02/2008
Court: KINGS COUNTY COURT (RD) (CAKINC1)

## End Of Report

# EXHIBIT C-2

**(Ex 2 to Ex C – Ognibene Declaration)**

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Gregory J. Smith #124127 | |

Gregory J. Smith #124127
The Law Office of Gregory J. Smith, PC
516 W. Shaw Ave., Ste. 200
Fresno CA 93704

TELEPHONE NO.: (559)221-5100    FAX NO. *(Optional):* (559)221-5126
E-MAIL ADDRESS *(Optional):* gsmith@gregsmithlawfirm.com
ATTORNEY FOR *(Name):* SYMMETRY ELEVATING SOLUTIONS, LLC

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** FRESNO
STREET ADDRESS: 1130 "O" Street
MAILING ADDRESS:
CITY AND ZIP CODE: Fresno  93721-2220
BRANCH NAME: CIVIL: UNLIMITED

PLAINTIFF/PETITIONER:
SYMMETRY ELEVATING SOLUTIONS, LLC

DEFENDANT/RESPONDENT:
HUMAN RESOURCE ADVANTAGE, LLC, DEBBIE BROWNLEE, AND DOES 1 - 10

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: |
|---|---|

TO *(insert name of party being served):* HUMAN RESOURCE ADVANTAGE, LLC AND DEBBIE BROWNLEE

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: March 20, 2018

Gregory J. Smith, Esq.

(TYPE OR PRINT NAME)                                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑ A copy of the summons and of the complaint.
2. ☐ Other: *(specify):*

*(To be completed by recipient):*
Date this form is signed:    4/9/18

James H. Wilkins

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1 Code of Civil Procedure, §§ 415.30, 417.10 |
|---|---|---|

HRA000056

# EXHIBIT D

**THE LAW OFFICES OF GREG SMITH**

*A PROFESSIONAL CORPORATION*

516 WEST SHAW AVENUE, SUITE 200
FRESNO, CALIFORNIA 93704

TELEPHONE   (559) 221-5100
FACSIMILE   (559) 221-5126

WRITER'S E-MAIL
gsmith@gregsmithlawfirm.com

March 17, 2017

**VIA U.S. MAIL – CERTIFIED–RETURN RECEIPT REQUESTED**          File No. 1140-000

Ms. Debbie Brownlee
Human Resource Advantage, LLC
2055 SE Pecos Drive
Madras, Oregon 97741

    Re:    Notice of Symmetry Elevating Solutions, LLC's Claim for Damages Against
Human Resource Advantage, LLC Arising from Professional Negligence and
Breach of Contract

Dear Ms. Brownlee:

       This firm and the undersigned act as legal counsel for Symmetry Elevating
Solutions, LLC ("SES"). As you may be aware, SES experienced a substantial embezzlement in
its Clovis, California office by an employee, Brandi Marshall. The embezzlement was carried
out between October 2014 and March 2016.

       The facts upon which SES bases its claim of professional negligence and breach
of contract arise from the deficient background check performed by your firm regarding Brandi
Marshall on or about October 15, 2014. You, Ms. Brownlee, are the person who agreed to
perform the background check on Brandi Marshall and later provided the results of the
background check on Brandi Marshall to SES. The services provided by Human Resource
Advantage, LLC ("HRA") in October 2014 included a complete background check, including a
criminal history, regarding Brandi Marshall.

       In short, the October 2014 background check came back "clean" with no
information that would raise concerns regarding hiring Brandi Marshall to work as the
bookkeeper for SES. SES reasonably relied on the HRA report and hired Brandi Marshall
trusting that a background check which met the standard of care expected of companies
performing background checks was completed by HRA. Unfortunately, in March of 2016, it was
discovered that Brandi Marshall embezzled $1,063,351.40 from SES while performing her
bookkeeping duties.

       The embezzlement was sophisticated and involved manipulation of the books of
SES so that the embezzlement was successfully hidden for an extended period of time. When the
embezzlement was discovered by SES, an extensive investigation was conducted. It was learned
that the embezzlement scheme was consummated by theft of checks made payable to SES which
were then deposited into the bookkeeper's or an accomplice's personal account at Wells Fargo

Ms. Debbie Brownlee
March 17, 2017
Page 2

ATM machines.  Apparently the deposits made at the ATM machines are not proofed.  Wells
Fargo has begun reimbursing SES for some of the stolen checks.  It remains, however, that had
HRA properly discharged its professional duties to SES, the embezzlement scheme would have
been completely prevented – Brandi Marshall never would have been hired.

Following the discovery of the embezzlement, SES contacted HRA to again
perform a background check on Brandi Marshall.  The results provided by HRA established
Brandi Marshall was using a fraudulent social security number and had an extensive criminal
record, including prior acts of embezzlement, grand theft, unlawful use of personal identifying
information, and forgery.  Without question, had the results of the second background check been
provided to SES when the first background check was performed, Brandi Marshall would not
have been hired to perform bookkeeping services for SES and SES would not have been another
victim of Brandi Marshall.

Damages to SES include not only the stolen money, but also substantial legal and
accounting fees that have been accrued in this matter.  Many of those expenses continue to
accrue.  In addition to the legal and accounting fees, many of the employees/officers and
directors of SES have expended substantial amounts of time in gathering information and
working with the attorneys and forensic accountants who were involved in this matter.  We are in
the process of developing a detailed accounting of those expenses.

It is, imperative that SES recover all of the losses incurred as a result of the
professional negligence of, and breach of contract by, HRA. I would therefore, appreciate you
providing this letter to your professional liability carrier or risk/claims manager so that we can,
hopefully, resolve this matter in an expedient manner.

The general counsel of SES, Johnson, Killen & Seiler, and specifically Mr. Joseph
V. Ferguson III, will be working with us as steps are taken to recover the losses arising from the
embezzlement made possible by the failure of HRA to properly perform the initial background
check on Brandi Marshall.

Yours very truly,

Gregory J. Smith

cc:    Symmetry Elevating Solutions, LLC
        Joseph V. Ferguson III, Esq.

# EXHIBIT E



Mary Gertsmeier
*Professional Liability Specialist*
630-521-8449
mgertsmeier@Hanover.com

Via Electronic Mail
Via US Certified Mail

April 18, 2017

Ms. Debbie Brownlee
Human Resource Advantage, LLC
2055 SE Pecos Drive
Madras, Oregon 97741

Re:     Notice of Claim:            03/27/2017
        Claimant:                  Symmetry Elevating Solutions, LLC
        Hanover File:              15-00948676
        Hanover Policy:            LHF A403590-02
        Policy Effective date:     09/26/2016

Dear Ms. Brownlee:

On March 27, 2017, Hanover Insurance Company (hereinafter "Hanover") received a copy of the claimant's attorney letter dated March 17, 2017. Hanover has reviewed the letter and the allegations against your company. As such, Hanover must deny coverage for the lawsuit for the reasons explained herein.

**A. Allegations against your company**

The following recites the allegations in the letter.  Please be advised that Hanover does not accept the allegations as true.

The claimant's attorney alleges that you preformed a background check on October 14, 2014 for them regarding a potential new employee named Brandi Marshall.

The background check for Ms. Marshall was "clean."  The check included her criminal history. As a result of the background check, the claimant hired Ms. Marshall as a book keeper for their company.  From October 2014 through March 2016, Ms. Marshall embezzled $1,063,351.40 from the claimant by stealing checks made payable to the claimant and depositing the embezzled funds into her personal account with Wells Fargo.

Once the embezzlement was discovered, the claimant requested that your company complete a second background check on Ms.  Marshall.  The second background check revealed that Ms. Marshall was using a fraudulent social security number and had an extensive criminal history including prior acts of embezzlement, forgery, grand theft, and unlawful use of personal identifying information. The claimant alleges that if the second background check had been completed initially, the claimants would never have employed Ms. Marshall.  Wells Fargo has refunded some of the money to the claimant.

The claimant claims damages as a result of your alleged negligent background check.  These damages include the lost funds, legal expenses and costs, and lost productivity time from their own employees.

**B. The Policy**

Your company is insured under a Miscellaneous Professional Liability policy written by Hanover Insurance Company, policy number LHF 403590-02 with effective dates of September 26, 2016 through September 26, 2017.  The policy provides for $1,000,000 in liability coverage per claim with $1,000,000 aggregate limit.  Claim expenses erode the liability limits.  The policy also contains a $2,500 deductible that applies to both claim damages and expenses.  Hanover is not obligate to make any damage of claim expense payments until the deductible is exhausted.   Please read your Hanover policy in full, but for the ease of reference, the following provisions, terms, and exclusions are relevant to this claim:

C. **Coverage Denial**

Your policy provides the following insuring agreement

> **Please read this policy carefully.**
>
> Throughout this **policy**, the terms **we**, **us** and **our** refer to the **Company** providing this insurance. The terms **you** and **your** refer to the persons and entities insured under this **policy**. Other terms in bold print have special meaning and are defined in the **policy**.
>
> **A. COVERAGE – WHAT THIS POLICY INSURES**
>
> **1.** Professional Services Coverage
>
> **We** will pay on **your** behalf those sums which **you** become legally obligated to pay as **damages** and **claim expenses** because of any **claim** made against **you** arising from a **wrongful act** in the rendering or failure to render **professional services** by **you**.
>
> The following additional requirements and limitations shall apply to coverage provided under **A.1** above and **A.3.** and **A.4.** below:
>
> a. The **wrongful act** must have first occurred on or after the applicable **retroactive date(s)**;
>
> b. **You** had no knowledge of facts which could have reasonably caused **you** to foresee a **claim** , or any knowledge of the **claim**, prior to the effective date of this **policy**; and**,**
>
> c. The **claim** must first be made and reported to **us** in writing during the **policy period** or any **extended reporting period**, if applicable, and must arise from any **wrongful act** to which this **policy** applies.
>
> ***
>
> **B. DEFENSE AND SETTLEMENT (INCLUDED IN THE LIMIT OF LIABILITY)**
>
> **We** have the right to investigate and the exclusive right to defend any **claim** made under this **policy**, even if the allegations are groundless, false or fraudulent until there is a final adjudication against **you**. **We** are not obligated to defend any criminal investigation, criminal proceeding or prosecution against **you**. If a **claim** is not covered under this **policy**, **we** will have no duty to defend it.
>
> ***
>
> **D. DEFINITIONS**
>
> **Claim** means a written demand or **suit you** receive.
>
> **Damages** means monetary judgments, awards or settlements unless otherwise excluded. **Damages** includes (i) pre-judgment interest; and (ii) post judgment interest that accrues after entry of judgment and before **we** have paid, offered to pay or deposited in court that part of judgment within the applicable limit of liability.
>
> **Damages** also means punitive or exemplary **damages** or the multiple portions thereof, if insurable under the applicable law of the jurisdiction most favorable to the insurability of such **damages** provided such jurisdiction is where:



Mary Gertsmeier
*Professional Liability Specialist*
630-521-8449
mgertsmeier@Hanover.com

1. Those **damages** were awarded or imposed; or
2. Any **wrongful act** occurred for which such **damages** were awarded or imposed;
3. The **named insured** resides, is incorporated or has its principal place of business; or
4. **We** are incorporated or have our principal place of business.

**Damages** do not include any costs or expenses in complying with any demand for or award of **equitable relief**, even if such compliance is compelled as a result of a judgment, award or settlement.

**Equitable relief** means a remedy not involving the payment of monetary damages.

**Loss** means **claim expenses**, **damages** and **disciplinary proceeding expenses** and does not include **equitable relief**.

**Wrongful act** and **wrongful acts** means any actual or alleged negligent act, error, omission, or misstatement committed in **your professional services**.

\*\*\*

## E. EXCLUSIONS - WHAT THIS POLICY DOES NOT INSURE

This **policy** does not apply to **claim(s)**:

13. Arising out of liability **you** assume under any contract or agreement; however, this exclusion does not apply to liability **you** would have in the absence of such contract or agreement;

17. Arising out of or resulting, directly or indirectly, from any actual or alleged commingling, misappropriation or improper use of funds or monies;

\*\*\*

## G. DUTIES IN THE EVENT OF CLAIM(S) OR POTENTIAL CLAIM(S)

1. If **you** receive a **claim**, **you** and any other involved **insured(s)** must see to it that **we** receive written notice of the **claim**, with full details including the date received**,** as soon as practicable, but in no event later than 90 days after such **claim** is first made.

2. **You** and any other involved **insured** must:
   a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **claim**;
   b) Authorize **us** to obtain records and other information;
   c) Cooperate with **us** in the investigation, defense or settlement of the **claim**; and
   d) Assist **us**, upon our request, in the enforcement of any right against any person or entity which may be liable to **you** because of damages to which this insurance may apply.

3. No **insured** will, except at that **insured's** own cost, voluntarily make a payment, assume any obligation, agree to a settlement or incur any expense related to a **claim** without **our** consent.

4. If, during the policy period, **you** become aware of a **wrongful act** or any facts or other circumstance that occurred on or after the retroactive date but prior to the end of the **policy period** which may reasonably be expected to subsequently give rise to a claim against **you**, **you**

must give **us** written notice as soon as practicable, but in any event not later than the end of the **policy period** or any **extended reporting period,** if applicable. To the extent possible notice should include:

**a)**     Where the **wrongful act** took place and any facts or circumstance concerning the wrongful act; and

**b)**     The names and addresses of any persons and entities involved.

**5.**     Any **claim** arising out of the **wrongful act**, facts or circumstance which is subsequently made against **you** shall be deemed to have been first made at the time **we** received such written notice from **you**, if we receive proper notice of the **potential claim** according to paragraph **4.** above.

The date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

***

Hanover must deny coverage for this matter based on Exclusion 17 of your policy.  Exclusion 17 bars coverage for claims "arising out of or resulting, directly or indirectly from any actual or alleged commingling, misappropriation or improper use of funds or monies". This exclusion operates to preclude coverage for this claim.  As all claims against your company arise out of or are a result, directly or indirectly from Ms. Marshall's embezzlement, Hanover denies coverage for this matter.

If coverage was afforded to this matter, Hanover reserves its rights as the policy for the breach of contract claim against you as the policy excludes coverage under exclusion 13 for claims arising out of liability **you** assume under any contract or agreement; however, this exclusion does not apply to liability **you** would have in the absence of such contract or agreement; As such, Hanover reserves its rights under the policy.

In addition, the Hanover policy's insuring agreement limits coverage to claims that "you had no knowledge of facts which could have reasonably caused you to foresee a claim, or any knowledge of the claim, prior to the effective date of this policy."  The policy defines "you" as those "persons and entities insured under the policy, and the definition of "insured" encompasses employees.  Hanover reserves its rights if it is determined that an insured knew of the claim or potential claim before the effective date of the policy based upon both the policy language and common law.

The foregoing evaluation as to coverage is based upon, and is necessarily limited to, the materials currently in Hanover's possession.  If you have any information which may impact this determination, please forward it to my attention at your earliest convenience.  Hanover continues to reserve the right to raise other Policy terms and conditions as defenses to coverage, which may be warranted in light of additional information provided. Hanover does not waive any rights it has or may have under the policy to deny coverage, at law or in equity, including those rights under terms of the Policy not referenced in this letter.  Nothing contained in or omitted from this letter should be construed as a waiver of any rights Hanover has or may have under the Policy, at law or in equity.  Hanover further reserves its rights to seek any declarations from a court with respect its denial.

If not already completed, we recommend that you immediately tender this matter to any other available insurance carriers for a determination of coverage. Please feel free to contact me with any questions or comments. Additionally, if you have any information which you believe would alter our decision, please send such information to my attention with in the next seven (7) days.

Thank you for reporting this matter.


Mary Gertsmeier
Hanover Insurance Company

cc:  Dibuduo & Defendis Insurance

# EXHIBIT F

1  GREGORY J. SMITH (124127)
   THE LAW OFFICE OF GREGORY J. SMITH
2  A PROFESSIONAL CORPORATION
   516 W. Shaw Avenue, Suite 200
3  Fresno, CA  93704
   Telephone: (559)221-5100
4  Facsimile No: (559)221-5126

5  Attorneys for Plaintiff
   SYMMETRY ELEVATING SOLUTIONS, LLC.
6

E-FILED
3/9/2018 10:55 AM
FRESNO COUNTY SUPERIOR COURT
By: M. Lopez, Deputy

7

8                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF FRESNO, UNLIMITED CIVIL CASE

10

11  SYMMETRY ELEVATING SOLUTIONS,           Case No.: 18CECG00822
    LLC.,
12                                          COMPLAINT OF SYMMETRY
                                            ELEVATING SOLUTIONS, LLC.
13                         Plaintiff,       AGAINST   HUMAN RESOURCE
                                            ADVANTAGE, LLC, DEBBIE
14       v.                                 BROWNLEE, AND DOES 1 - 10

15  HUMAN RESOURCE ADVANTAGE, LLC,
    DEBBIE BROWNLEE, AND DOES 1 - 10,
16
                           Defendants.
17

18

19

20  Plaintiff hereby alleges as follows:

21                          **GENERAL ALLEGATIONS**

22       1.      Plaintiff, SYMMETRY ELEVATING SOLUTIONS, LLC., ("SES" or "Plaintiff") is,

23  and at all times mentioned in this Complaint was, duly licensed to conduct business in the state of

24  California, with its principal place of business in Clovis, California.

25       2.       Defendant, HUMAN RESOURCE ADVANTAGE, LLC ("HRA"), is a company

26  that performed services for SES in the state of California based upon a contract that was entered into

27  in the state of California and HRA performed acts in Fresno County that are the basis for this

28  lawsuit.

The Law Office of
Gregory J. Smith
516 W. Shaw Ave., Suite 200
Fresno, CA  93704
Phone: (559)221-5100
Fax: (559) 221-5126

1.
SYMMETRY ELEVATING SOLUTIONS, LLC'S COMPLAINT AGAINST HRA, BROWNLEE AND DOES

3.      Defendant, DEBBIE BROWNLEE ("BROWNLEE"), is an individual who performed services for SES in the state of California based upon a contract that was entered into in the state of California and who performed acts in Fresno County that are the basis for this lawsuit.

4.      Plaintiff is currently unaware of the true names and capacities of defendants sued as DOES 1 through 10 ("DOES") and, therefore, sues these as fictitious names pursuant to Code of Civil Procedure section 474.  Plaintiff will file an amendment stating the true names and capacities of DOES 1 through 10 once the names and capacities of said defendants have been ascertained.

5.      HRA, BROWNLEE and DOES are hereinafter collectively referred to as "Defendants."

6.      At all times herein mentioned, Defendants, and each of them, were the agents of each of the other Defendants and were acting within the purpose and scope of said agency relative to the wrongful conduct alleged in this Complaint. As the agents of each other, Defendants are jointly and severally liable for the damages suffered by Plaintiff.

7.      Venue is proper in the County of Fresno because contracts between SES and Defendants were entered into and were to be performed within the County of Fresno, because the Defendants breached contracts with SES in the County of Fresno, because the dispute between SES and Defendants arose in the County of Fresno, and because Defendants engaged in wrongful conduct in the County of Fresno that harmed SES.

## BACKGROUND FACTS

8.      At all times relevant herein, SES was a wholesaler of various types of elevator equipment for installation in homes and other places. SES purchased the equipment from a supplier and then sold the equipment to the customers of SES which are retailers of elevator equipment. Until the wrongful conduct of HRA and Brandi Marshall, as alleged hereafter, SES was growing significantly over the last few years and was experiencing increasing sales volume and high cash flow.

9.      Until 2014, the accounting functions of SES were performed in a SES branch office in Minnesota. In 2014, the accounting functions of SES were transferred from Minnesota to the SES office in Clovis, California. In light of the accounting functions being moved to the Clovis office, the

The Law Office of
Gregory J. Smith
516 W. Shaw Ave., Suite 200
Fresno, CA  93704
Phone: (559)221-5100
Fax: (559) 221-5126

2.

SYMMETRY ELEVATING SOLUTIONS, LLC'S COMPLAINT AGAINST HRA, BROWNLEE AND DOES

1  president of SES, Brian Nichols, began searching for a bookkeeper who would work out of the

2  Clovis office of SES. Mr. Nichols and Mr. Van Patten decided Ms. Marshall was the best candidate

3  and offered her employment on the condition she successfully passed a background check.

4      10.    Mr. Van Patten was familiar with a company, Human Resource Advantage (HRA),

5  which performed background checks for Mr. Van Patten's previous employer. BROWNLEE was

6  contacted and asked if she would be willing to perform employment background checks for SES.

7  BROWNLEE agreed to perform employment background checks for SES and, thereafter, conducted

8  employment background investigations regarding SES's applicants for employment and represented

9  that HRA was knowledgeable and able to competently perform the necessary background checks for

10  SES. HRA forwarded to SES the paperwork to be completed so that background checks could be

11  performed. After Ms. Marshall was conditionally offered employment, Ms. Marshall completed the

12  paperwork provided by HRA that was necessary for authorization of a background check and the

13  written authorization along with SES's request for a background check on Ms. Marshall was

14  submitted to HRA. HRA agreed to and did undertake the background check. Thereafter, a report was

15  provided by BROWNLEE to SES on October 15, 2014 which indicated Ms. Marshall's social

16  security number was valid and that there were no criminal records located concerning Ms. Marshall.

17  Once provided with the clean background check information, Ms. Marshall was allowed to continue

18  to be SES's bookkeeper and was allowed to oversee the accounting records and bank deposits.

19      11.    Besides doing the background check, the prior employers listed on Ms. Marshall's

20  employment application and resume were contacted by telephone by Mr. Nichols. The two most

21  recent employers provided "good" references for Ms. Marshall. St. Mary's human resources

22  department confirmed they had employed Ms. Marshall and that she was eligible for re-hire. The

23  human resources department for The Courtyard by Marriott stated there were no problems during

24  Ms. Marshall's employment but that they were "changing ownership" so the records showing Ms.

25  Marshall's dates of employment were not available. The person Mr. Nichols spoke with had worked

26  with Ms. Marshall and stated she was a very smart, diligent and detail oriented employee. Based

27  upon the absence of any problems with the background check performed by HRA and

28  communicated to SES by BROWNLEE and the favorable reference checks, Ms. Marshall was

The Law Office of
Gregory J. Smith
516 W. Shaw Ave., Suite 200
Fresno, CA  93704
Phone: (559)221-5100
Fax: (559) 221-5126

3.
SYMMETRY ELEVATING SOLUTIONS, LLC'S COMPLAINT AGAINST HRA, BROWNLEE AND DOES

1    allowed to continue her employment having "passed" the background check process.

2        12.    When SES hired HRA to conduct a background check on Ms. Marshall, it was with

3    the understanding that the report would verify Ms. Marshall's social security number, provide SES

4    with Ms. Marshall's correct criminal history, and list any crimes she had been charged with or

5    convicted of in the past. The report received on October 15, 2014 from HRA showed Ms. Marshall's

6    stated social security number was correct and there was nothing in Ms. Marshall's past that would

7    lead a reasonable person to believe Ms. Marshall was a criminal.

8        13.    From the date of Ms. Marshall's hire until March of 2016, nothing happened that

9    suggested to SES that Ms. Marshall was embezzling from SES. No significant behavioral or

10    accounting problems were observed. Ms. Marshall's style of living that was observable in the office

11    environment did not change. Ms. Marshall's initial vehicle she drove to work was in the shop a few

12    times. Ms. Marshall then reported that her father died and left her two classic cars. She said she sold

13    them to pay off some debt and buy a reliable car. Ms. Marshall purchased a used vehicle that did not

14    seem out of the ordinary or beyond her means. Ms. Marshall did not start wearing expensive clothes,

15    did not talk about taking trips, there was no indication of drug use, and she did not start wearing

16    expensive jewelry. Rather, Ms. Marshall appeared to have three or four sets of clothes which did not

17    seem to change during the time she was employed at SES.

18        14.    Other matters mentioned by Ms. Marshall also indicated that Ms. Marshall was

19    constrained by her finances. For example, Ms. Marshall reported that she was waiting for a medical

20    procedure (non-life threatening gastric band issue) to be performed by the Veterans' Administration

21    because it was "too expensive" for her to pay for herself. In addition, when Ms. Marshall's daughter

22    was seen one or two times by other employees of SES, the daughter was not dressed expensively or

23    as though the daughter was from a wealthy family.

24        15.    From October 2014 through the end of Ms. Marshall's employment, the accounting

25    reports Mr. Nichols received from Ms. Marshall appeared normal and accurate. Ms. Marshall

26    prepared a monthly budget report for Mr. Nichols along with other financial reporting documents

27    that were prepared and reviewed in the normal course of business. During this time frame, nothing

28    seemed "odd" or "incorrect" to Mr. Nichols or anyone else in SES management/ownership. No one

The Law Office of
Gregory J. Smith
516 W. Shaw Ave., Suite 200
Fresno, CA  93704
Phone: (559)221-5100
Fax: (559) 221-5126

4.

SYMMETRY ELEVATING SOLUTIONS, LLC'S COMPLAINT AGAINST HRA, BROWNLEE AND DOES

1  recalls anything they thought to be a "red flag" or warning sign that something was amiss with Ms.

2  Marshall or the accounting/bookkeeping of SES.

3      16.    In March of 2016, Ms. Marshall claimed to have been diagnosed with cancer and

4  abandoned her employment at SES. Thereafter, on or about March 30, 2016, Mr. Nichols discovered

5  that checks sent to Symmetry by customers were not recorded as having been deposited to the

6  Symmetry bank account. On or about March 30, Mr. Nichols uncovered facts that strongly suggested

7  embezzlement by Ms. Marshall of checks sent to Symmetry by customers beginning in the months

8  after Ms. Marshall was hired. The total amount of the embezzlement has been determined to be in

9  excess of one million dollars.

10      17.    After the embezzlement was suspected, on March 30, 2016, Mr. Nichols sent to

11  BROWNLEE and HRA the same information on Ms. Marshall that was initially sent to

12  BROWNLEE and HRA and requested that a background check be performed. This background

13  check came back on March 31, 2016 indicating that the social security number used by Ms. Marshall

14  was for a deceased person with a date of death in 2010, that a second social security number was

15  being used by Ms. Marshall, and that there were charges pending against Ms. Marshall in San Diego,

16  California for felony embezzlement, grand theft, forgery and other crimes. After comparing the first

17  and second background check reports, it was discovered that HRA had known of an address used by

18  Ms. Marshall in San Diego County at the time of the initial background check in 2014 but,

19  inexplicably, failed to conduct a criminal background check for Ms. Marshall in San Diego County.

20  The fact that HRA and BROWNLEE did not conduct a criminal background check on Ms. Marshall

21  in the County of San Diego was not disclosed to SES in 2014.

22      18.    SES would not have hired Ms. Marshall had the first background check indicated she

23  was using the social security number of a deceased person and/or that Ms. Marshall had been

24  charged with multiple financial crimes in San Diego County. But for the negligent conduct of

25  BROWNLEE and HRA in failing to conduct a criminal background check in San Diego County and

26  negligently providing a background check report that failed to inform SES of the use by Ms.

27  Marshall of fraudulent social security numbers and Ms. Marshall's extensive criminal history, Ms.

28  Marshall would not have been permitted to remain employed and would never have had the

The Law Office of
Gregory J. Smith
516 W. Shaw Ave., Suite 200
Fresno, CA 93704
Phone: (559)221-5100
Fax: (559) 221-5126

5.

SYMMETRY ELEVATING SOLUTIONS, LLC'S COMPLAINT AGAINST HRA, BROWNLEE AND DOES

1    opportunity to embezzle from SES.

2        19.      A forensic accountant was hired to complete the analysis begun by Mr. Nichols in

3    April 2016 and compute the amount that was embezzled from SES. Management's analyses were

4    quite extensive and the forensic accountant used and verified those analyses when possible. Based

5    on the findings, it was determined that $1,063,351.40 was embezzled by Ms. Marshall from SES

6    between October 2014 and March 2016. The investigation confirmed that Ms. Marshall stole checks

7    from SES and manipulated the company's accounting records to conceal the stolen checks.

8        20.      The damage to SES from the embezzlement that occurred because of the negligence

9    of HRA, BROWNLEE, and DOES has been catastrophic. Before the embezzlement, SES was

10   growing and making income that was increasing each year. Net operating income for SES was as

11   follows: In 2012: $425,032.36. In 2013: $639,867.89. In 2014: $704,609.06. In 2015: $784,919.72.

12   In 2016: due to the embezzlement that occurred because of the negligence of HRA and

13   BROWNLEE, SES ceased operations on September 30, 2016 and only earned net operating income

14   of $477,479.32. But for the negligence of HRA and BROWNLEE, SES would have continued as a

15   profitable company with increasing sales and profits which would have been $863,412 in 2016;

16   $949,753 in 2017; $1,044,729 in 2018; and would have continued for many years to increase. The

17   lost profits of SES proximately caused by the wrongful conduct of equal $2,380,415.

18       21.      Besides the loss of operating income and the cessation of business that was caused by

19   the negligence of HRA and BROWNLEE, SES incurred other damages that included, but are not

20   limited to, substantial expenses in the investigation of the embezzlement, required adjustments and

21   corrections to the books and tax returns, attorneys' fees, and unexpected and extraordinary time

22   worked by SES board members. None of these damages would have been suffered by SES but for

23   the negligence of HRA and BROWNLEE that permitted the embezzlement committed by Ms.

24   Marshall. The expenses to SES directly caused by the negligence of HRA and BROWNLEE

25   includes, without limitation, fees in excess of $252,796 investigating the embezzlement, correcting

26   the books and tax returns, handling the criminal investigation conducted by the FBI and other

27   services provided by accountants and lawyers. Hard costs expended as a direct result of the wrongful

28   conduct of Defendants of $15,849. In addition, expenses to SES directly caused by the negligence of

The Law Office of
Gregory J. Smith
516 W. Shaw Ave, Suite 200
Fresno, CA 93704
Phone: (559)221-5100
Fax: (559) 221-5126

1    HRA and BROWNLEE includes, without limitation, $320,157 of labor of employees and board

2    members. Therefore, besides the lost profits $2,380,415, additional damages of $588,802 were

3    proximately caused by Defendants for a current total of $2,969,217.

4                                  **FIRST CAUSE OF ACTION**

5                                        **(Negligence)**

6              **(Alleged against Defendants – HRA, BROWNLEE and DOES 1 - 10)**

7              22.    Plaintiff, incorporates by reference the allegations of Paragraphs 1 through 21, above,

8    as though fully set forth herein.

9              23.    Defendants owed a duty of care to SES and breached that duty of care for all the

10   reasons described in this Complaint. Defendants undertook the performance of a background check

11   on Ms. Marshall and were negligent in the performance of that background check because they

12   failed to use the skill and care that a reasonably careful person conducting a background check on an

13   applicant/employee would have used in similar circumstances. If Defendants had conducted the

14   background check without being negligent, the use of fraudulent social security numbers and a

15   history of criminal conduct would have been provided to SES by Defendants. But for the negligence

16   of Defendants, Ms. Marshall would not have been allowed to remain employed by SES and she

17   would never have had the opportunity to embezzle from SES. The damages suffered by SES as a

18   result of the negligence of Defendants were foreseeable and were proximately caused by the

19   negligence of Defendants.

20             24.    As a result of the negligence of Defendants, SES has been damaged in an amount in

21   excess of $2,969,217 and damages will continue to increase over time.

22                        **PRAYER FOR RELIEF AGAINST DEFENDANTS**

23                              **HRA, BROWNLEE, AND DOES**

24   WHEREFORE, Plaintiff prays for relief as follows:

25             1.     For compensatory damages caused by Defendants' negligence in an amount not less

26                    than $2,969,217;

27             2.     For pre-judgment and post-judgment interest at the maximum legal rate until the

28                    judgment awarded to Plaintiff is paid in full; and

The Law Office of
Gregory J. Smith
516 W. Shaw Ave., Suite 200
Fresno, CA 93704
Phone: (559)221-5100
Fax: (559) 221-5126

1    3.    For such other relief as the Court deems just and proper.

2

3

4

5    Date: __March 9, 2018_____          By: __s/Gregory J. Smith_____

6                                             GREGORY J. SMITH
                                             The Law Office of Gregory J. Smith
7                                             A Professional Corporation
                                             Attorneys for Plaintiff
8                                             Symmetry Elevating Solutions, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Law Office of
Gregory J. Smith
516 W. Shaw Ave., Suite 200
Fresno, CA  93704
Phone: (559)221-5100
Fax: (559) 221-5126

8.
SYMMETRY ELEVATING SOLUTIONS, LLC'S COMPLAINT AGAINST HRA, BROWNLEE AND DOES

# EXHIBIT G

1    GREGORY J. SMITH (124127)
      THE LAW OFFICE OF GREGORY J. SMITH
2    A PROFESSIONAL CORPORATION
      516 W. Shaw Avenue, Suite 200
3    Fresno, CA 93704
      Telephone: (559)221-5100
4    Facsimile No: (559)221-5126

5    Attorneys for Plaintiff
      SYMMETRY ELEVATING SOLUTIONS, LLC.
6
                                                    RECEIVED
7                                                   6/15/2021 12:40 PM
                                                    FRESNO COUNTY SUPERIOR COURT
8                                                   By: I. Herrera, Deputy

            FILED
            JUN 3 0 2021
            FRESNO COUNTY SUPERIOR COURT
            By_____
                              DEPT. 503

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10        IN AND FOR THE COUNTY OF FRESNO, UNLIMITED CIVIL CASE

11

12   SYMMETRY ELEVATING SOLUTIONS,         Case No.: 18CECG00822
      LLC.,
13                                           JUDGMENT FOR SYMMETRY
                                             ELEVATING SOLUTIONS, LLC
14                        Plaintiff,         AGAINST HUMAN RESOURCE
                                             ADVANTAGE, LLC AND DEBBIE
15   v.                                      BROWNLEE AFTER DEFAULT
                                             (PROPOSED)
16   HUMAN RESOURCE ADVANTAGE, LLC,
      DEBBIE BROWNLEE, AND DOES 1 - 10,
17
                          Defendants.
18

19

20        Having reviewed the Request For Court Judgment after default together with all supporting

21   papers submitted by Plaintiff, Symmetry Elevating Solutions, LLC:

22        THE COURT HEREBY ENTERS JUDGMENT in favor of Plaintiff Symmetry Elevating

23   Solutions, LLC. (hereinafter "Judgment Creditor") against Defendant Human Resource Advantage,

24   LLC and against Defendant Debbie Brownlee as follows:

25        1.    Compensatory damages in the amount of $2,969,217 as demanded in the Complaint

26   of Symmetry Elevating Solutions, LLC. filed in Fresno Superior Court in this matter, plus pre-

27   judgment interest of $802,305 plus costs of $435 for a total JUDGMENT of $3,771,957.

28

The Law Office of
Gregory J. Smith
516 W. Shaw Ave., Suite 200
Fresno, CA 93704
Phone: (559)221-5100
Fax: (559)221-5126

                                            1.
JUDGMENT FOR SYMMETRY ELEVATING SOLUTIONS AGAINST HUMAN RESOURCE ADVANTAGE AND DEBBIE BROWNLEE

1

2.      Post-judgment interest shall accrue on all sums due hereunder at the legal rate of ten

2    percent (10.00%) per annum from the date of entry of this Judgment until paid in full to Judgment

3    Creditor. Post-judgment interest shall accrue at a rate of $1,033.41 per day (Judgment of $3,771,957

4    times 10.00% per year divided by 365 days per year).

5

6

7    Date: ___6/30/2021___                    By: _____

                                                 FRESNO SUPERIOR COURT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Law Office of
Gregory J. Smith
516 W. Shaw Ave., Suite 200
Fresno, CA 93704
Phone: (559)221-5100
Fax: (559) 221-5126

2.

JUDGMENT FOR SYMMETRY ELEVATING SOLUTIONS AGAINST HUMAN RESOURCE ADVANTAGE AND DEBBIE BROWNLEE