UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Human Resource Advantage, LLC, et al., | No. 1:21-cv-01610-KJM-BAM |
| Plaintiffs, | ORDER |
| v. | |
| The Hanover Insurance Company, | |
| Defendant. | |

In this insurance coverage dispute, defendant Hanover Insurance Company (Hanover) moves for summary judgment of plaintiff Human Resource Advantage's (HRA) claims that Hanover wrongly denied coverage for losses related to an allegedly negligent background check completed by HRA. In the alternative, Hanover moves for summary judgment on its cross-complaint for declaratory judgment. For the reasons below, the court **grants** defendant's motion for summary judgment of HRA's claims and closes the case.

I.   BACKGROUND

The following facts are undisputed unless otherwise noted. Plaintiff HRA and its principal Debbie Brownlee, sued here as an individual,[1] operate and manage HRA, a limited

/////

---

[1] Subsequent references to HRA refer to Ms. Brownlee and HRA collectively.

1

1   liability company with its principal place of business in Oregon.  HRA provides pre-employment
2   background screenings for employers.  Brownlee Decl. ¶¶ 1–2, ECF No. 35-1; Joint Statement of
3   Undisputed Facts (SUF) No. 1, ECF No. 35-2.  Defendant, Hanover Insurance Company
4   (Hanover), issued a professional liability policy (the Policy) to HRA effective from
5   September 26, 2016, to September 26, 2017, with a retroactive effective date of September 26,
6   2003.  Hurley Decl. ¶ 3, Ex. B, ECF No. 33-1; Policy (Policy) at 22, Ex. B-1, ECF No. 33-1.  In
7   other words, the Policy was effective between 2003 and 2016.

In relevant part, the Policy covers claims made against HRA "arising from a **wrongful act** in the rendering or failure to render **professional services** by [HRA]."  Section A.1 of the Policy, entitled "Professional Services Coverage," states:

> **We** will pay on **your** behalf those sums which **you** become legally obligated to pay as damages and claim expenses because of any claim made against you arising from a wrongful act in the rendering or failure to render professional services by you.

Policy at 25 (emphasis in original).[2]  The Policy imposes the "following additional requirements and limitations," applicable to coverage under A.1:

> b. **You** had no knowledge of facts which could have reasonably caused **you** to foresee a **claim**, or any knowledge of the **claim**, prior to the effective date of this **policy**; and,
>
> c. The **claim** must first be made and reported to **us** in writing during the **policy period** or any **extended reporting period**, if applicable, and must arise from any **wrongful act** to which this **policy** applies.

*Id.*

The Policy also explains that Hanover has "no duty to defend" any claim that is not covered under the Policy and includes eighteen exclusions from coverage.  Relevant here, the

/////

---

[2] Unless otherwise indicated, when citing to the Policy, emphases appear in the original Policy.

Policy contains Exclusion 17, which provides:

> This **policy** does not apply to **claim(s)**:
>
> 17. Arising out of or resulting, directly or indirectly, from any actual or alleged commingling, misappropriation or improper use of funds or monies.

*Id.* at 29.

In the event of a claim or potential claim, the Policy set forth the following duties:

> 1. If **you** receive a **claim**, **you** and any other involved **insured(s)** must see to it that **we** receive written notice of the **claim**, with full details including the date received, as soon as practicable, but in no event later than 90 days after such **claim** is first made.
>
> 2. **You** and any other involved **insured** must:
>
>    a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **claim**;
>
>    b) Authorize **us** to obtain records and other information;
>
>    c) Cooperate with **us** in the investigation, defense or settlement of the **claim**;

*Id.* at 31.

In 2014, Symmetry Elevation Solutions LLC (SES) requested an initial Background Order be run by HRA on a prospective employee, Brandi Marshall. SUF No. 16. HRA's 2014 background check on Marshall did not uncover any criminal history or uncover that Marshall used a fraudulent social security number. *Id.* No. 17. In 2016, SES requested HRA complete a second background check on Marshall, which revealed Marshall had a criminal record, including prior acts of embezzlement, grand theft and forgery. *Id.* No. 19. The background check also revealed Marshall's use of the fraudulent social security number in the hiring process, and HRA asserts this fraudulent number resulted in the first incomplete background check in 2014. *Id.*

On March 17, 2017, counsel for SES sent a letter (the SES Letter) to HRA alleging that Marshall embezzled more than one million dollars while employed by SES from October 2014 to March 2016. *Id.* No. 20. The SES Letter alleged professional negligence and breach of contract

3

against HRA based on the allegedly deficient 2014 background check. *Id.* No. 22. SES's Letter requested HRA provide a copy of the letter to Hanover. *Id.* It is not clear from the record when HRA provided a copy of the SES letter to Hanover, but the parties do not dispute that Hanover received a copy of the letter within a month of HRA's initial receipt of it. *See id.* Nos. 20–23 (stipulating HRA received letter in March 2017 and Hanover responded to it in April 2017).

In a letter from Hanover and addressed to Brownlee (Hanover's Denial Letter), Mary Gertsmeier, a Professional Liability Specialist, on behalf of Hanover denied coverage for the matter presented in the SES Letter stating, "Hanover must deny coverage for the lawsuit for the reasons explained herein." *Id.* No. 23; Denial Letter, Ex. E, ECF No. 33-1. The letter cited the language of Exclusion 17 as its basis for denial. SUF No. 24; Denial Letter at 67. Hanover's Denial Letter further explained, "[t]he foregoing evaluation as to coverage is based upon, and is necessarily limited to, the materials currently in Hanover's possession. If you have any information which may impact this determination, please forward it to my attention at your earliest convenience." SUF No. 24; Denial Letter at 67.

On March 9, 2018, SES sued HRA and Brownlee in Fresno County Superior Court, alleging negligence related to a background check and embezzlement, and claiming nearly three million dollars in damages. SUF Nos. 25–26. HRA and Brownlee acknowledged receipt of the complaint on April 9, 2018, but never reported the lawsuit to Hanover. *Id.* Nos. 27–28. The Fresno court entered a default judgment of $3,771,957 against HRA on June 30, 2021. *Id.* No. 29.

HRA then filed this action against Hanover in Fresno County Superior Court, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. *See generally* Notice of Removal, Compl. Ex. A, ECF No. 1-2. Hanover filed an answer and a cross complaint, seeking a declaration that it has no duty to defend or indemnify HRA against SES's allegations. *See* Notice of Removal, ECF No. 1. Hanover then removed the matter from Fresno County Superior Court to the Eastern District of California. *Id.* HRA filed an answer to Hanover's cross complaint. *See* Answer, ECF No. 4. The matter was then reassigned to the undersigned. *See* Order (Apr. 4, 2025), ECF No. 43.

Hanover moves for summary judgment on all claims and its cross complaint, or in the alternative summary judgment on its cross-complaint requesting declaratory judgment in its favor. *See* Mot., ECF No. 31. The motion is fully briefed. *See* Opp'n, ECF No. 35; Reply, ECF No. 36. The court heard oral argument on the motion by videoconference on June 26, 2025. James Wilkins appeared for plaintiff HRA and Kelly Ognibene[3] appeared for defendant Hanover. *See* Mins. Hr'g, ECF No. 51. For the first time at hearing, HRA's counsel made an argument invoking the concurrent proximate cause doctrine, with reference to *State Farm Mutual Automobile Insurance Co. v. Partridge*, 10 Cal.3d 94 (1973). The court allowed Hanover to file a surreply addressing the applicability of *Partridge*, which Hanover now has. *See* Mins. Hr'g; Surreply, ECF No. 53. Ultimately, due to technical difficulties plaintiff's counsel experienced with the videoconference connection and the court's repeated unsuccessful attempts to trouble shoot, the court concluded the hearing earlier than it would have otherwise. The court in its discretion finds further oral argument unnecessary and has now submitted the matter, without holding plaintiff's counsel's technical difficulties against plaintiff in resolving the motion here.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment must first show no material fact is in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). It can do so by showing the record establishes facts beyond genuine dispute, or it can show the adverse party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). The nonmoving party must

---

[3] The court commends Ms. Ognibene for her professional appearance and deportment during the hearing, reflecting her understanding of and respect for the court's standing order and the Minute Order at ECF No. 48.

1    then "establish that there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v.*
2    *Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).  Both must cite "particular parts of materials in the
3    record[.]"  Fed. R. Civ. P. 56(c)(1)(A).  The court views the record in the light most favorable to
4    the nonmoving party and draws reasonable inferences in that party's favor.  *Matsushita*, 475 U.S.
5    at 587–88; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

### B.    Interpretation of Insurance Policies

The court begins its analysis with a brief review of the law governing insurance policy interpretation and the related duty to defend.  In this diversity action, the court applies California contract law to interpret the Policy.  *See Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008).  The court must interpret the Policy's language "in context, with regard to its intended function[.]"  *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1265 (1992) (citation omitted).  Unless the parties use words in a technical sense or the words have acquired a special meaning by usage, courts interpret words in accordance with their plain meaning, as laypeople ordinarily would.  *Legacy Vulcan Corp. v. Super. Ct.*, 185 Cal. App. 4th 677, 688 (2010).  "If contractual language is clear and explicit, it governs."  *Bank of the* West, 2 Cal. 4th at 1264.

But if language is capable of two or more reasonable understandings when interpreted in the ordinary and popular sense by a layperson, the resulting ambiguity is generally resolved in favor of coverage to protect the "objectively reasonable expectations of the insured."  *AIU Ins. Co. v. Superior Ct.*, 51 Cal. 3d 807, 822 (1990) (citations omitted).  Coverage clauses are interpreted broadly "so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer."  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 648 (2003) (alterations omitted) (quoting *White v. W. Title Ins. Co.*, 40 Cal. 3d 870, 881 (1985)).  "Contract interpretation, including the resolution of any ambiguity, is solely a judicial function, unless the interpretation turns on the credibility of extrinsic evidence." *Legacy Vulcan*, 185 Cal. App. at 688 (citation omitted).  "Courts will not strain to create an ambiguity where none exists." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18–19 (1995) (citation omitted).

Relatedly, "[a]n insurer has a duty to defend when the policy is ambiguous and the insured would reasonably expect the insurer to defend him or her against the suit based on the nature and kind of risk covered by the policy, or when the underlying suit potentially seeks damages within the coverage of the policy." *Foster–Gardner, Inc. v. Nat'l Union Fire Ins. Co.*, 18 Cal. 4th 857, 869 (1998). The duty to defend in an insurance contract is distinct from and broader than the duty to indemnify or advance defense costs. *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 295 (1993) (citations omitted). Where an insurance contract imposes a duty to defend on an insurer, the insurer "owes a broad duty to defend its insured against claims that create a potential for indemnity." *Id*. (citations omitted). "[T]he duty to defend is so broad that it only requires 'a bare potential or possibility of coverage as the trigger of a defense duty.'" *Nat'l Union Fire Ins. Co. v. Seagate Techs., Inc.*, 466 F. App'x 653, 655 (9th Cir. 2012) (quoting *Montrose*, 6 Cal. 4th at 300).

To prevail on a motion for summary judgment "[HRA] must prove the existence of a *potential for coverage*, while [Hanover] must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*." *Crosby Est. at Rancho Santa Fe Master Ass'n v. Ironshore Specialty Ins. Co.*, 498 F. Supp. 3d 1242, 1254–55 (S.D. Cal. 2020) (quoting *Montrose*, 6 Cal. 4th at 300) (emphases in original).

### III.  BREACH OF CONTRACT

Hanover contends it did not breach the Policy's terms when it declined to defend against the SES claim because Hanover had no duty to defend HRA. Hanover asserts three independent bases for it is position it had no duty to defend: (1) the SES claim arose from the misappropriation of funds and is therefore excluded under the plain language of Exclusion 17 of the Policy; (2) the duty to defend was barred by the prior knowledge exception in Section A.1 of the Policy; and (3) plaintiff failed to perform under the Policy, thereby barring coverage.

#### A.  Exclusion 17: Misappropriation of Funds

The court begins with Hanover's assertion it had no duty to defend HRA against the SES claim because the plain language of Exclusion 17 excludes coverage for claims arising out of a

1  misappropriation of funds. Mem. P. & A. (Mem.) at 9, ECF No. 32. Hanover asserts Marshall's
2  activities, which caused SES's injury, fall under this exclusion. *Id.* at 9–10. Hanover argues the
3  exclusion conspicuously, clearly and unambiguously applies to claims involving a third party's
4  misappropriation of funds and is not limited to acts of the insured. *Id.* at 16–20. HRA disagrees
5  and its arguments fall into four categories. First, it argues Exclusion 17 is subject to at least two
6  reasonable interpretations and is therefore ambiguous. Opp'n at 16. Second, HRA asserts
7  Hanover failed to alert HRA to the broad reading of Exclusion 17 on which Hanover now relies.
8  *Id.* at 18–19. Third, HRA maintains the underlying SES claim does not arise from a
9  misappropriation of funds, but instead an alleged "fail[ure] to conduct a proper pre-employment
10 background screening;" a claim it argues falls outside the scope of Exclusion 17. *Id.* at 19.
11 Finally, and for the first time at hearing as noted above, HRA argued Hanover had a duty to
12 defend under the concurrent proximate cause doctrine as addressed in the *Partridge* case. *See*
13 *generally Partridge*, 10 Cal.3d 94.
14      Turning first to the language of Exclusion 17, in California "to be enforceable, any
15 provision that takes away or limits coverage reasonably expected by an insured must be
16 conspicuous, plain and clear." *Haynes v. Farmers Ins. Exchange*, 32 Cal. 4th 1198, 1204 (2004)
17 (internal quotation marks and citation omitted). To be conspicuous, plain and clear the
18 "limitation must be placed and printed so that it will attract the reader's attention" and "stated
19 precisely and understandably, in words that are part of the working vocabulary of the average
20 layperson." *Id.* (citations omitted). Hanover argues Exclusion 17 satisfies California's
21 conspicuous language standard because it is located in a section of the Policy titled, in bold and
22 all uppercase, "EXCLUSIONS – WHAT THIS POLICY DOES NOT INSURE," and referenced
23 in the Policy's Table of Contents. Reply at 6. The court agrees: no reasonable jury could find
24 Exclusion 17 to be inconspicuous, and HRA does not challenge the conspicuousness of
25 Exclusion 17. *See* Opp'n at 13; *see, e.g.*, *Dominguez v. Fin. Indem. Co.*, 183 Cal. App. 4th
26 388, 396 (2010) (finding limiting language is conspicuous when "placed and printed so that [it]
27 will attract the reader's attention"); *Haynes*, 32 Cal. 4th at 1205 (finding exclusion not
28 conspicuous, plain and clear where "[t]here is nothing in the heading to alert a reader that it limits

8

1    permissive user coverage, nor anything in the section to attract a reader's attention to the limiting
2    language").

3    Proceeding to an analysis of the language of the exclusion, Hanover argues Exclusion 17
4    is unambiguous and written clearly, in words understandable by a layperson. Mem. at 26. While
5    the court finds the language of Exclusion 17 is broad, it concludes the language is clear and
6    unambiguous. The plain language of Exclusion 17 encompasses claims either "arising out of or
7    resulting, directly or indirectly from any actual or alleged commingling, misappropriation or
8    improper use of funds or monies." Policy at 30. Hanover correctly asserts that California courts
9    consistently interpret the term "any" in the context of insurance policies to mean "every," or to be
10   "without limit and no matter what kind." Mem. at 18 (citing *Delaney v. Superior Court*, 50 Cal.
11   3d 785, 798 (1990)); *see also City of Carlsbad v. Ins. Co. of State of Pennsylvania*, 180 Cal. App.
12   4th 176, 181 (2009) ("From the earliest days of statehood we have interpreted 'any' to be broad,
13   general and all embracing.") (quoting *California State Auto. Ass'n Inter-Ins. Bureau v. Warwick*,
14   17 Cal. 3d 190, 195 (1976)). Reading the term "any" as "every," the Policy excludes every actual
15   or alleged misappropriation of funds, regardless of who commits the misappropriation. Under the
16   plain language of the Policy, it is immaterial whether the individual who misappropriated funds is
17   considered "insured" under the terms of the Policy. Breadth alone does not necessarily create
18   ambiguity, and the court finds no ambiguity in its reading of Exclusion 17. *See Atl. Mut. Ins. Co.*
19   *v. Ruiz*, 123 Cal. App. 4th 1197, 1203 (2004) (breadth does not create ambiguity because a "word
20   with a broad meaning or multiple meanings may be used for that very reason—its breadth—to
21   achieve a broad purpose" (citations omitted)). That is, there is no indication from the plain
22   language of Exclusion 17 that the parties intended the Exclusion to apply only to the insured, and
23   no reasonable jury could find the exclusion was not conspicuous, plain and clear.

24   Contrary to HRA's assertions that Exclusion 17 is ambiguous in the context of a "fair
25   reading of the entire policy," Opp'n at 16, a broad reading of the Exclusion is further supported
26   when it is considered in the context of the Policy as a whole. "[C]ourts are obligated to give
27   effect to every part of an insurance policy, [and] such policies should not be read in such a way as
28   to render some of its terms meaningless." *C.J. Segerstrom & Sons v. Lexington Ins. Co.*, 724 F.

9

1   Supp. 3d 1052, 1065 (C.D. Cal. 2023) (citing *AIU Ins. Co.*, 51 Cal. 3d at 838; Cal. Civ. Code
2   § 1641).  Two other exclusions in the Policy—Exclusions 1 and 18—explicitly limit their
3   applicability by referencing the insured.  Policy at 29–30.  For example, Exception 18 explains
4   the Policy does not apply to claims "arising out of a **claim** by any **insured**."  Policy at 30.
5   Reading Exclusion 17 to apply only to insureds would render the specific limitations in
6   Exclusions 1 and 18 meaningless.  Moreover, by including person-specific limitations in certain
7   exclusions but not others, the Policy demonstrates the parties could have drafted Exclusion 17 to
8   bar only claims of misappropriation by the insured; they chose instead to apply Exclusion 17
9   broadly.

10   Neither party identified any California state court decision addressing the specific issue of
11   the scope of a misappropriation-of-funds exclusion, and the court has not identified a decision
12   either.  Instead, HRA relies primarily on *Essex v. City of Bakersfield*, in which a California
13   appellate court found the modifications to the policy's automobile exclusions "[were] not plain
14   and clear enough to defeat the reasonable expectations of the [insured]." 154 Cal. App. 4th 696,
15   711 (2007) *as modified* (Aug. 27, 2007).  In *Essex*, the court based its reasoning on the fact that
16   the policy contained multiple auto exclusions and endorsements rendering the scope of coverage
17   vague.  *Id.* at 707.  The court found "no average layperson would have understood the auto
18   exclusions" to preclude "coverage in any cases involving automobiles by anyone anywhere." *Id.*
19   *Essex* is neither analogous nor controlling here.  Notably, *Essex* addressed the
20   interpretation of auto exclusions, not exclusions for misappropriation of funds.  Even assuming
21   the auto exclusion in *Essex* were analogous to Exclusion 17, unlike in *Essex* in which the insurer
22   previously modified the at-issue exclusion, here there is only one version of the exclusion in the
23   Policy.  Also, *Essex* has "been criticized as improperly reading language into an insurance
24   provision."  *Am. Alternative Ins. Corp. v. Goodwill of the Olympics & Rainier Region*, No. C17-
25   5978 BHS, 2020 WL 236759, at *3 (W.D. Wash. Jan. 15, 2020) (citing *Maxum Indem. Co. v.*
26   *Kaur*, 356 F. Supp. 3d 987, 1005 (E.D. Cal. 2018)); *Bernstein by Valdez v. Nautilus Ins. Co.*,
27   No. 16-CV-02883, 2017 WL 3149599, at *3–4 (S.D. Cal. July 25, 2017) (distinguishing *Essex*
28   and finding auto exclusion unambiguously applies to preclude coverage for single car accident

10

against insured company where employee driver injured passenger in accident). Finally, the *Essex* court reasoned that the auto exclusion could not apply because it would nonsensically preclude coverage for claims not insured by the agreement at all. *Essex*, 154 Cal. App. 4th at 709. Here, without Exclusion 17, the Policy would have extended to a third-party misappropriation of funds. For these reasons, the court declines to extend the reasoning of *Essex* to the present case.

Hanover cites to multiple district court decisions outside the Ninth Circuit in which courts have specifically addressed the scope of a broadly worded misappropriation-of-funds exclusion. In those cases, to the extent they are persuasive, courts read policy exclusions that are materially similar to Exclusion 17 broadly, concluding the exclusions apply regardless of whether the misappropriation was committed by the insured or a third party. *See, e.g.*, *Acct. Res., Inc. v. Hiscox, Inc.*, No. 3:15-CV-01764 (JAM), 2016 WL 5844465, at *2 (D. Conn. Sept. 30, 2016) ("The policy's wording says nothing about *who* must engage in the theft or misappropriation of funds. The absence of limitation bespeaks breadth.") (emphasis in original); *ALPS Prop. & Cas. Ins. Co. v. Murphy*, 473 F. Supp. 3d 585 (N.D.W. Va. 2020); *Huang & Assocs., P.C. v. Hanover Ins. Co.*, 673 F. Supp. 3d 252 (E.D.N.Y. 2023), *appeal dismissed*, No. 23-888, 2023 WL 5675503 (2d Cir. July 5, 2023). These decisions support the conclusion that Exclusion 17, while broad, is not ambiguous. Ultimately, this court reaches its own conclusion based on the plain language of the policy and the relevant principles of contract interpretation under California law.

Second, HRA incorrectly contends that even if Exclusion 17 is unambiguous, Hanover was obligated to alert HRA about the broad scope of the exclusion because it is a "policy limitation[] . . . which they would not reasonably expect." Opp'n at 15–16. Because the court finds Exclusion 17 to be unambiguous, the court need not consider the expectations of the insured. *See Bank of the West*, 2 Cal. 4th at 1265. Relatedly, because the court finds Exclusion 17 is conspicuous, plain and clear as explained above, Hanover was under no legal obligation to alert HRA to the broad applicability of Exclusion 17. *Cf. Mission Viejo Emergency Med. Assocs. v. Beta Healthcare Grp.*, 197 Cal. App. 4th 1146, 1157 (2011) (finding insurer was under no obligation to call special attention to arbitration clause in policy because clause was conspicuous, plain and clear).

11

Finally, having found Exclusion 17 to be conspicuous, plain and clear, the court analyzes whether SES's claim "arose out of" Marshall's embezzlement and is therefore barred from coverage under Exclusion 17.  As with the broad reading of "any claim" explained above, "California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions." *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328 (1999).  Courts in this circuit and state consistently interpret "arising out of" to mean "incident to, or having connection with" and encompassing a wider range of scenarios than the term "caused by." *Cont'l Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) (quoting *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F.2d 659, 664 (9th Cir. 1960) (internal quotations omitted)).  Moreover, the phrase "arising out of" does not imply any specific causality requirement. *Acceptance Ins. Co.*, 69 Cal. App. 4th at 328.  "Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *Id.*  The same breadth and definition also applies to the term "resulting from." *Mosley v. Pac. Specialty Ins. Co.*, 49 Cal. App. 5th 417, 424 (2020).

To determine if the SES claim "arose out of" Marshall's misappropriation of funds, the court assesses whether her embezzlement meets the "minimal causal connection" standard outlined in *Mosley*.  *See id.*  Hanover argues Marshall's embezzlement satisfies the minimal causal connection standard because her embezzlement is "indisputably" the cause of SES's financial injury and is foundational to HRA's claim.  Mem. at 21.  HRA disagrees and asserts its "liability arises from the professional services it rendered," not from any of Marshall's actions.  Opp'n at 22.  Because HRA alleges liability originated from its performance of the background check, rather than Marshall's improper use of SES funds, HRA argues there are "no *claim[s]* being asserted against [HRA]" that would fall under Exclusion 17.  Opp'n at 19 (emphasis in original).  In this respect, the court agrees with Hanover:  Considering the broad scope of Exclusion 17 and the low bar California courts assign to the phrase "arising out of," the court finds Marshall's embezzlement and SES's claim to be minimally causally connected.  All damages SES alleged in its letter and complaint against HRA stem from the money Marshall

12

embezzled from SES, the investigation into the embezzlement and the necessary adjustments to SES's bookkeeping. Ex. D SES Letter at 62, ECF No. 33-1; Ex. F SES Complaint ¶¶ 20–21, ECF No. 33-1. While HRA correctly explains that SES's underlying claim is negligence, SES would not have a suit without Marshall's embezzlement as there would be no injury to SES. *See, e.g.*, *Southgate Recreation & Park Dist. v. California Assn. for Park & Recreation Ins.*, 106 Cal. App. 4th 293, 302 (2003) (negligence claim against plaintiffs arose out of construction contract because their "failure to retain funds . . . that very contract that comprise the basis of the subcontractor lawsuits," triggering insurance policy exclusion). Thus, Marshall's misappropriation of funds is at least incidentally connected to SES's claim, and coverage for that claim is therefore within the scope of Exclusion 17.

As noted above, for the first time at hearing HRA asserted that under the concurrent proximate cause doctrine addressed in *Partridge*, 10 Cal.3d 94, Hanover had a duty to defend HRA. Hanover argues HRA waived the concurrent causation argument in failing to make the argument previously. Because Hanover has now had an opportunity to address *Partridge* in its surreply and is not otherwise unduly prejudiced, the court considers the applicability of the concurrent causation doctrine in the interests of resolving the question on the merits.

In *Partridge*, the California Supreme Court provided guidance regarding how to interpret policy exclusions when an injury is caused by both a covered and an excluded risk. There, the insured modified his gun to have a "hair trigger action" and later, while driving off-road to hunt rabbits, hit a bump that caused the gun to fire and injure a passenger. *Partridge*, 10 Cal. 3d at 97–98. The injured passenger sued, and the court addressed whether the insured's homeowner policy applied despite an auto-use exclusion. The court found coverage under the homeowner policy because the injury had two concurrent proximate causes: one covered (modifying the trigger) and one excluded (negligent driving).

*Partridge* is not analogous to this case. The concurrent proximate causation doctrine applies to "multiple causes that operated totally independently of one another." *Conestoga Servs. Corp. v. Exec. Risk Indem., Inc.*, 312 F.3d 976, 983 (9th Cir. 2002). "[W]hen two, independent, negligent acts concur to produce one injury, each act should be viewed separately to determine

13

policy coverage." *Underwriters Ins. Co. v. Purdie*, 145 Cal. App. 3d 57, 68 (Ct. App. 1983). But *Partridge* applies only when there are "two negligent acts or omissions of the insured, one of which, independently of the excluded cause, renders the insured liable for the resulting injuries." *Daggs v. Foremost Ins. Co.*, 148 Cal. App. 3d 726, 730 (Ct. App. 1983) (collecting cases). Here, HRA's alleged negligence in conducting the background check of Marshall is not independent of Marshall's embezzlement of funds from SES. Instead, any negligence and the embezzlement are dependently intertwined and exist as links in a causal chain. Because the allegedly negligent acts of HRA were not independent of the excluded misappropriation of funds, *Partridge* is not applicable. *See, e.g.*, *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 835, (2006).

Because Exclusion 17 unambiguously bars coverage for SES's claim against HRA and because SES's claim arose out of a misappropriation of funds, Hanover had no duty to defend or indemnify HRA. The court need not reach Hanover's alternative defenses against liability including HRA's alleged non-performance.

## IV.    BREACH OF THE IMPLIED COVENANT

Hanover also moves for summary judgment on HRA's second claim of breach of the implied covenant of good faith and fair dealing and asserts Oregon law applies to HRA's second claim. HRA opposes and asserts California law applies to the second claim. While the parties disagree on the applicable state law, they agree HRA's second claim fails under each state's law if there is no coverage under the Policy.

As explained above, Hanover did not breach its contract because HRA was not entitled to coverage for the SES claim in the underlying action. Even assuming California law applies as HRA asserts, because HRA was not entitled to coverage there can be no breach of the implied covenant of good faith and fair dealing. *Compare Colony Ins. Co. v. Advanced Logistics Mgmt., Inc.*, No. CV 15-1965 PA (MANX), 2015 WL 12745787, at *8 (C.D. Cal. Nov. 13, 2015) (citing *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1152 n.10 (1990) ("[A]bsent an actual withholding of benefits due, there is no breach of contract and likewise no breach of the insurer's implied covenant.")) *with Morrow v. Red Shield Ins. Co.*, 212 Or. App. 653, 662 (2007) ("[T]he implied covenant of good faith and fair dealing does not vary the substantive terms of the contract

14

or impose obligations inconsistent with the terms of the contract." (citing *Best v. U. S. National Bank*, 303 Or. 557, 563 (1987)).  The court therefore grants summary judgment on HRA's second claim of breach of the implied covenant of good faith and fair dealing.

V.    CONCLUSION

The court **grants** defendant Hanover's motion for summary judgment as explained above. The clerk of court is directed to close the case.

This order resolves ECF No. 31.

IT IS SO ORDERED.

DATED: September 24, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE